Alexander Grigorievich URITSKY
Petitioner,

v.

Tom RIDGE, Director, Department of Homeland Security, Michael Garcia, Acting Commissioner, Bureau of Immigration and Customs Services, Philip Wrona, Interim Director, Bureau of Immigration and Customs Enforcement, Carol Jennifer, District Director, Detroit District Bureau of Immigration and Customs Services, Respondents.

No. 03–72814.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 29, 2003.

Richard A. Kulics, Birmingham, MI, for Petitioner.

## OPINION AND JUDGMENT ORDER GRANTING PLAINTIFF'S HABEAS CORPUS PETITION

DUGGAN, District Judge.

Petitioner filed a Petition for Writ of Habeas Corpus under 28 U.S.C. Section 2241 on July 23, 2003, alleging that he is being unlawfully detained by the United States Department of Homeland Security ("DHS") in violation of his Fourth and Fifth Amendment rights.[1] Petitioner seeks a preliminary injunction preventing

---

1. Petitioner initially was detained by the United States Immigration and Naturalization Service which subsequently was replaced by the Bureau of Immigration and Customs Enforcement, an arm of the Department of Homeland Security.

Respondents from continuing to detain him pending the resolution of removal proceedings against him. For the reasons that follow, Petitioner's request for habeas relief is granted.

## I. Factual and Procedural Background

Petitioner is a native of Ukraine and a citizen of Israel. He entered the United States on a non-immigrant visa in 1996, and became a lawful permanent resident in January 2002. On September 24, 2002, at age 17, Petitioner pled guilty to Third Degree Criminal Sexual Conduct in violation of Michigan law, in the Circuit Court for the County of Oakland, State of Michigan.[2] Under the authority of Michigan's Holmes Youthful Trainee Act, the state court decided not to enter a judgment of conviction. *See* MICH. COMP. LAWS ANN. §§ 762.11–762.15. Instead, the court assigned Petitioner to "Youthful Trainee Status," and sentenced him to two years probation and payment of court costs and fees.

On October 28, 2002, the government issued a notice of removal proceedings against Petitioner based on his September 24 guilty plea. Under the Immigration and Nationality Act ("INA"), an alien is subject to deportation any time after admission upon conviction of an "aggravated felony;" sexual abuse of a minor is an aggravated felony under the INA. 8 U.S.C. §§ 1101(a)(43)(A) & 1227(a)(2)(A)(iii). Petitioner immediately was detained and held without bond, as mandated by the INA. 8 U.S.C. § 1226(c)(1)(B).

Before the Immigration Court, Petitioner challenged his removability and, on February 19, 2003, filed a motion to terminate proceedings. In his motion, Petitioner argued that he had never been "convicted" of an aggravated felony. On April 3, 2003, Immigration Judge Terry Christian terminated the government's removal proceedings against Petitioner, agreeing with Petitioner that his assignment to Youthful Trainee Status did not constitute a "conviction" for immigration purposes. Petitioner immediately filed a motion for custody (bond) redetermination, which the Immigration Judge granted. The Immigration Judge redetermined Petitioner's bond from no bond to $5,000 bond, finding that because there was no "conviction," there was no mandatory detention under 8 U.S.C. Section 1226(c). The government immediately appealed both of the Immigration Judge's decisions to the Board of Immigration Appeals ("BIA"). By operation of federal regulations, the government's notices of appeal automatically stayed the Immigration Judge's orders terminating the removal proceedings and setting a bond. *See* 8 C.F.R. §§ 1003.6(a) & 1003.19(i)(2).

On July 16, 2003, the BIA issued a briefing schedule requiring the parties to file their briefs by August 6, 2003. The government filed its brief on August 5, 2003. As of this date, the BIA has not issued an order addressing either appeal.

## II. Jurisdiction

■ 28 U.S.C. Section 2241 grants district courts the power to issue habeas corpus relief where the petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241. Recently, in *Demore v. Kim*, 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003), the Supreme Court held that Congress did not deprive the courts of jurisdiction to grant habeas relief to an alien challenging his or her detention when it amended Section 236(c) of the Immigration

---

**2.** Specifically, Petitioner pled guilty to violating Michigan Compiled Laws Annotated Section 750.520d, sexual penetration of a person at least 13 year of age and under 16 years or age. MICH. COMP. LAWS ANN. § 750.520d.

and Nationality Act, 8 U.S.C. Section 1226(c). *Kim,* 538 U.S. at ——, 123 S.Ct. at 1714. Thus this Court has jurisdiction to review Petitioner's constitutional challenge to his detention pursuant to Section 1226(c).

## III. Applicable Law and Analysis

8 U.S.C. Section 1226(c) requires the Attorney General of the United States to detain certain classes of aliens during the pendency of their removal proceedings, including aliens who have been convicted of an aggravated felony. 8 U.S.C. §§ 1226(c)(1) & 1227(a)(2)(A)(iii). In *Kim,* the Supreme Court upheld the constitutionality of Section 1226(c), finding that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained *for the brief period necessary for their removal proceedings.*" *Kim,* 538 U.S. at ——, 123 S.Ct. at 1712 (emphasis added).

In *Kim,* the government sought to remove a lawful permanent resident alien in light of his prior first-degree burglary and "petty theft with priors" convictions. Before the immigration court, the alien did not dispute the validity of his prior convictions nor did he dispute the government's conclusion that he was subject to mandatory detention pursuant to Section 1226(c). Instead, the alien filed a habeas corpus action arguing that his detention violated the Due Process Clause because the government made no determination that he posed either a danger to society or a flight risk.

Although recognizing that aliens are entitled to Fifth Amendment due process protection in deportation proceedings, the Court held that detention during removal proceedings is a constitutionally valid aspect of the deportation process. *Kim,* 538

U.S. at ——, 123 S.Ct. at 1717. The Court found that "[s]uch detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Id.* at 1720. Referring to its earlier decision in *Reno v. Flores,* 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993), the Court also concluded that the Constitution does not require the government to conduct an individualized determination in every case to determine if detention is necessary. *Id.* at 1719 (quoting *Flores,* 507 U.S. at 313–14, 113 S.Ct. 1439)(holding that " 'reasonable presumptions and generic rules,' even when made by the INS rather than Congress, are not necessarily impermissible exercises of Congress' traditional power to legislate with respect to aliens.' ")

The alien, as well as other courts that had found Section 1226(c) unconstitutional prior to *Kim,* relied heavily upon the Supreme Court's earlier opinion in *Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), in which the Court considered a due process challenge to the detention of aliens pursuant to 8 U.S.C. Section 1231 following final orders of removal. Section 1231 provides in part that when an alien who has been ordered removed is not in fact removed during the 90–day statutory "removal period," that alien "may be detained beyond the removal period" in the discretion of the Attorney General. 8 U.S.C. § 1231. The issue before the *Zadvydas* Court was whether this provision authorizes the Attorney General to detain a removable alien indefinitely beyond the removal period or only for a period reasonably necessary to secure the alien's removal. *Zadvydas,* 533 U.S. at 682, 121 S.Ct. 2491. The aliens challenging their mandatory detention in *Zadvydas* were aliens for whom removal was "no

longer practically attainable" because no country would accept them. *Id.* at 690, 121 S.Ct. 2491.

The *Zadvydas* Court construed Section 1231 as "limit[ing] an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689, 121 S.Ct. 2491. The Court held that the statute does not permit indefinite detention. *Id.* Interpreting the statute as permitting indefinite detention of an alien, the Court concluded, would raise serious constitutional concerns. *Id.* at 690, 121 S.Ct. 2491. Thus the Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute." *Id.* at 699, 121 S.Ct. 2491.

The Court acknowledged that habeas courts might have difficulty determining when an alien's removal no longer is reasonably foreseeable; therefore, the Court established a detention period that the courts could consider presumptively reasonable. Looking to Congress' decision in 1996 to shorten the removal period from six months to ninety days, the Court concluded that Congress doubted the constitutionality of detention for more than six months. *Id.* at 701, 121 S.Ct. 2491. The Court held that "[a]fter this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." [3] *Id.*

In reaching its decision that Section 1231 does not permit indefinite detention, the *Zadvydas* Court analyzed the two regulatory goals set forth in the statute "ensuring the appearance of aliens at future immigration proceedings" and "[p]reventing danger to the community." The Court found that neither goal justified indefinite civil detention as administered by the statute. *Id.* at 690, 121 S.Ct. 2491. With respect to the first goal of ensuring the alien's appearance, the Court determined that this goal "is weak or nonexistent where removal seems a remote possibility at best." *Id.* While recognizing that the second justification does not necessarily diminish because the alien is nonremovable, the Court adhered to its prior holdings in which it "upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections." *Id.* at 691, 121 S.Ct. 2491 (citations omitted).

As the Court subsequently would do in *Kim,* the *Zadvydas* Court distinguished Section 1231 from Section 1226(c). First, the Court noted that Section 1231 applied not only to terrorists and criminals, but also to ordinary visa violators. *Id.* at 697, 121 S.Ct. 2491. More importantly to the Court, post-removal-period detention pursuant to Section 1231, unlike detention pending a determination of removability pursuant to Section 1226(c), in certain cases has no obvious termination point. *Id.* As the Supreme Court noted in *Kim,* while the period of detention at issue in *Zadvydas* was "indefinite" and "potentially permanent," detention pending a determination of removability not only has a definite termination point but in the majority of cases it lasts for less than the ninety days the Court considered presumptively valid in *Zadvydas. Kim,* 538 U.S. at ——, 123 S.Ct. at 1720.

To support its finding in *Kim* that aliens' detention pending removal hearings

3. The Court went on, however, to say that "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas,* 533 U.S. at 701, 121 S.Ct. 2491.

generally lasts less than ninety days, the Court relied on figures compiled by the Executive Office for Immigration Review ("EOIR"). *Id.* at 1721. According to the EOIR, in 85% of the cases in which aliens are detained pursuant to 1226(c), removal proceedings are completed in an average time of forty-seven days and a median of thirty days. *Id.* The remaining 15% of cases involve aliens who have appealed the decision of the Immigration Judge to the BIA; and the appeal takes an average of four months, with a median time that is slightly shorter. *Id.* While the alien in *Kim* had been detained for six months prior to the district court's order granting habeas corpus relief, the Supreme Court noted that he had asked for continuance at one point which extended his detention period. *Id.* The majority in *Kim* also found the length of the alien's detention less significant because he had conceded that he was deportable. *Id.* at 1722.

While a majority of the *Kim* Court held that the alien's Fifth Amendment rights were not violated by his detention, five justices agreed that detention pursuant to Section 1226(c) could become unconstitutional under certain circumstances. In fact a majority of the Court held that under certain circumstances a lawful permanent resident alien subject to removal proceedings would be entitled to an individualized hearing and a finding that detention is necessary to serve some governmental interest.[4] As Justice Kennedy concluded, an alien "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 1722 (Kennedy, J., concurring). For example, "[w]ere there to be an unreasonable delay by the INS in pursuing and completing deportation pro-

ceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id.*

Justices Souter, Stevens, and Ginsburg concluded that the Due Process Clause conditions a potentially lengthy detention of a lawful permanent resident subject to removal proceedings on a hearing and an impartial decisionmaker's finding that detention is necessary to further a governmental purpose. *Id.* at 1731 (Souter, Stevens, Ginsburg, J., concurring in Part I and dissenting in Part II). More specifically, these three justices held that "the Fifth Amendment permits detention only where 'heightened, substantive due process scrutiny' finds a 'sufficiently compelling' governmental need." *Id.* at 1731–32 (quoting *Flores*, 507 U.S. at 316, 113 S.Ct. 1439). In his dissent, Justice Breyer interpreted Section 1226(c) as requiring the government to permit a detained alien who claims that he is not deportable to seek an individualized assessment of flight risk and dangerousness to support his detention, provided that the alien's claim is (1) not interposed solely for purposes of delay and (2) raises a question of law or fact that is not insubstantial. *Id.* at 1747 (Breyer, J., dissenting).

Petitioner, now nineteen years of age, has lived in the United States since he was eleven years old. He has been detained since October 2002. This period is well beyond the short period of detention pending a determination of removability that the Supreme Court assumed was typical when it decided *Kim.* Petitioner's eleven to twelve month detention also is far longer than the six month presumptively reasonable period of post-removal deten-

---

4. As discussed *infra,* four justices held that the Fifth Amendment requires individual assessment of flight risk and dangerousness for *all* lawful permanent resident aliens subject to removal who contest their deportability.

tion set forth by the Court in *Zadvydas*. In the Immigration Court, Petitioner contested his removability claiming that he has never been "convicted" of an aggravated felony. The Immigration Judge's termination of his removal proceedings on this basis suggests that there is a significant likelihood that Petitioner in fact is not subject to removal. Under these circumstances, the Court finds that under the Fifth Amendment, Petitioner is entitled to an individualized determination that his detention is necessary to further a sufficiently compelling governmental need. Because the Immigration Court, in fact, already has found that Petitioner's continued detention is not justified by such a need, the individualized determination requirement has been met. According to the May 6, 2003 Order releasing Petitioner from custody under a bond of $5,000, Immigration Judge Christian found, as required by 8 C.F.R. Section 236.1(c), clear and convincing evidence that if released Petitioner would not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.

Accordingly,

**IT IS ORDERED**, that the Petition for Writ of Habeas Corpus is Granted;

**IT IS FURTHER ORDERED**, that Respondents shall immediately release Petitioner upon receipt of this Opinion and Order pursuant to the terms of release set forth by Immigration Judge Christian in his May 6, 2003 custody redetermination decision.