Milton ASHLEY, Petitioner–Plaintiff,

v.

Thomas RIDGE, Secretary, Department of Homeland Security, et al., Respondents–Defendants.

Civil Action No. 03–4078 (JLL).

United States District Court, D. New Jersey.

Oct. 29, 2003.

Ruchi Thaker, Bretz & Coven, LLP, New York City, for Petitioner–Plaintiff.

Christopher J. Christie, United States Attorney, Anthony J. Labruna, Jr. Assistant United States Attorney Newark, NJ, for Respondents–Defendants.

## OPINION & ORDER

LINARES, District Judge.

Presently before this Court is a petition for a writ of habeas corpus by Petitioner Milton Ashley. Petitioner asserts that he is currently being detained in violation of the Due Process Clause of the United

States Constitution by virtue of the automatic stay of his bail pursuant to 8 C.F.R. § 3.19(i)(2).

## FACTUAL BACKGROUND

The facts in this case are not disputed. Petitioner Milton Ashley, a native of Jamaica, was admitted to the United States in 1986 and became a lawful permanent resident four years later. (Thaker Affirmation in Support of Petitioner's Verified Petition for a Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief, ¶ 3; Exh. B) ("Thaker Aff."). In November 1993, Petitioner was arrested on various charges and spent ten days in criminal custody. (Thaker Aff., Exh. A). Pursuant to this arrest, in January 1995, he pled guilty to the offense of Endangering the Welfare of a Child, Third Degree, under New Jersey Statute 2C:24–4a. (Thaker Aff., ¶ 11). Petitioner was sentenced to three years probation and psychological counseling for his offense, and was required to register with the State of New Jersey as a sex offender. He completed his probation without any violations in 1998. (Thaker Aff., ¶ 12).

On August 6, 2003, Petitioner was arrested at his home in Montclair, New Jersey by officials from the Bureau of Immigration and Customs Enforcement ("BICE") and taken to the Hudson County Correctional Facility in Kearny, New Jersey. (Thaker Aff., ¶ 13). He was served with a Notice to Appear in deportation proceedings as a result of his 1995 conviction. (Thaker Aff., ¶ 14). At the same time, Petitioner was provided with a Notice of Custody Determination from the BICE, stating that the BICE District Director had determined that he should remain in BICE custody and that no bond should be set. (Thaker Aff., ¶ 15). As permitted by 8 C.F.R. § 236.1(d)(1), Petitioner then requested a redetermination of his custody status before an Immigration Judge. (Thaker Aff., ¶ 16).

On August 14, 2003, Immigration Judge Annie S. Garcy held a hearing to redetermine Petitioner's custody status. (Thaker Aff., ¶ 17, Exh. E). The Immigration Judge determined that bond should be set at $5,000. (Thaker Aff., ¶ 19). Immediately following the hearing, BICE filed form EOIR–43 with the Board of Immigration Appeals ("BIA"), a Notice of Service Intent to Appeal Custody Redetermination. (Thaker Aff., ¶ 20). Pursuant to 8 C.F.R. § 3.19(i)(2), this filing automatically stayed the Immigration Judge's redetermination decision. Petitioner remains detained pending this appeal. It is unclear how long the BICE's appeal of the Immigration Judge's bond determination will take.[1]

Subsequently, Petitioner filed a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the constitutionality of his continued detention by the government. Respondents have supplied an opposition to the petition for writ of habeas corpus. This Court heard oral argument on the matter on October 14, 2003.

The issue presented before this Court is whether the Government can continue to detain Petitioner pending appeal, without judicial review of the automatic stay of the bail determination, notwithstanding the Immigration Judge's decision that Petitioner be released on bond. For the reasons set forth below, this Court finds that Petitioner's continued detention pursuant to the automatic stay provision of 8 C.F.R.

---

**1.** During oral argument, the Government informed the Court that briefs have been submitted for the appeal and that there is an "internal understanding" within the BIA to make determinations of bond hearings on expedited review, which "should" take about 30–45 days. (Tr. of Proceedings, Oct. 15, 2003).

§ 3.19(i)(2) is not consistent with the dictates of the Due Process Clause of the Constitution.

## LEGAL BACKGROUND

The custodial status of aliens who have committed crimes is governed by 8 U.S.C. § 1226 (Immigration and Nationality Act § 236). Section (a) of this provision gives the Attorney General discretion to arrest and detain an alien pending the removal decision and discretion to release the alien on bond. The alien may seek a bond redetermination hearing of the Attorney General's custody determination with an Immigration Judge. 8 C.F.R. § 236.1(d)(1). In contrast to this discretionary state of affairs, section (c) of this provision requires the Attorney General to detain those aliens with enumerated criminal convictions.[2] Section 1226(c) applies only prospectively, and therefore does not affect criminal aliens who were released from incarceration prior to the law's effective date of October 9, 1998. *See Matter of Adeniji*, 1999 WL 1100900, 22 I. & N. Dec. 1102 (BIA 1999). Therefore, all criminal aliens released from incarceration prior to October 9, 1998, such as Petitioner in the present case, are subject only to the discretionary provisions of § 1226(a).

Prior to October 31, 2001, aliens detained pursuant to the Attorney General's discretion under 8 U.S.C. § 1226(a) who were then granted release on a bond determination by an Immigration Judge, like Petitioner, could only remain detained if the Immigration and Naturalization Service ("INS") sought an emergency stay of the bond determination from the BIA pursuant to 8 C.F.R. § 3.19(i)(1). Presently, however, the Department of Homeland Security (encompassing the former INS) is authorized pursuant to 8 C.F.R. § 3.19(i)(2) to invoke an automatic stay in any case in which the district director has determined that an alien should either not be released or has set bond of $10,000 or more, and an order of the immigration judge then authorizes release on bond or otherwise. The stated purpose of this automatic stay provision is twofold: 1) to ensure removal by preventing the alien from fleeing, and 2) to protect the public from potential harm. Executive Office for Immigration Review; Review of Custody Determination, 66 Fed.Reg. 54909 (Oct. 31, 2001). The stay "allow[s] the Service to maintain the status quo while it seeks review by the Board [of Immigration Appeals], and thereby avoid[s] the necessity for a case-by-case determination of whether a stay should be granted." *Id.* The regulation reads:

(i) Stay of custody order pending Service appeal—

2) Automatic stay in certain cases. In any case in which the district director has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon the Service's filing of a Notice of Service Intent to Appeal Custody Redetermination (Form EOIR–43) with the immigration court within one business day of the issuance of the order, and shall remain in abeyance pending decision of the appeal by the Board of Immigration Appeals. The stay shall lapse if the Service fails to file a notice of appeal with the Board in accordance with § 3.38 within ten business days of the issuance of the order of the immigration judge. If the Board authorizes release (on bond

---

**2.** A criminal alien subject to § 236(c) is eligible for release if release is necessary to protect him or his family when cooperating in a criminal investigation, an issue not implicated in the case at hand. 8 U.S.C. § 1226(c)(2).

or otherwise), that order shall be automatically stayed for five business days. If, within that five-day period, the Commissioner certifies the Board's custody order to the Attorney General pursuant to § 3.1(h)(1) of this chapter, the Board's order shall continue to be stayed pending the decision of the Attorney General.

8 C.F.R. § 3.19(i)(2).

Based on the aforesaid regulation, the Attorney General may, by filing a Notice of Intent to Appeal form, stay the Immigration Judge's determination as to bond pending decision of the appeal by the Board of Immigration Appeals.

## DISCUSSION

### A. *Exhaustion of Administrative Remedies*

As a threshold matter, it is important to first address the Government's contention that this action is premature and that the Court lacks jurisdiction to hear this case because Petitioner has not yet exhausted his administrative remedies. Because Petitioner's case is soon to be heard by the Board of Immigration Appeals, the Government argues that the administrative process should conclude before a federal court hears the habeas petition.

■ It is well established that federal courts retain jurisdiction under 28 U.S.C. § 2241 to decide habeas petitions filed by criminal aliens subject to deportation or removal. *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *Beshli v. Dep't of Homeland Security*, 272 F.Supp.2d 514, 519 (E.D.Pa.2003) (citing *Chmakov v. Blackman*, 266 F.3d 210, 213 (3d Cir.2001)). Indeed, "[a]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that con-text that its protections have been strongest." *St. Cyr*, 121 S.Ct. at 2280.

■ However, under the doctrine of exhaustion of administrative remedies, a party generally cannot seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself. *Howell v. INS*, 72 F.3d 288, 291 (2d Cir.1995). Failure to exhaust administrative remedies may lead to dismissal for lack of subject matter jurisdiction. *DiLaura v. Power Auth.*, 982 F.2d 73, 79 (2d Cir.1992). This Court recognizes the importance of the exhaustion doctrine, which serves the dual purpose of protecting the authority of the administrative agency and promoting judicial efficiency. *Grant v. Zemski*, 54 F.Supp.2d 437, 442 (E.D.Pa. 1999).

■ In considering exhaustion arguments, it is important to focus on the precise issue as to which petitioner seeks judicial relief. *Cabreja–Rojas v. Reno*, 999 F.Supp. 493, 496 (S.D.N.Y.1998). If the issue presented here were the merits of Petitioner's deportation case or the constitutionality of his deportation, petitioner would likely have to exhaust his administrative remedies. However, Petitioner is challenging something very different, that is, he claims that the *automatic stay provision itself*, and not the underlying determination on the merits, is unconstitutional as applied. The constitutionality of *this* regulation will not (and in fact cannot) be resolved on administrative appeal to the BIA. Therefore, Petitioner will find no recourse on this particular constitutional claim through administrative mechanisms.

■ Even if exhaustion principles were to apply to Petitioner's particular assertion, this doctrine is not without exception. Courts have found that the exhaustion of administrative remedies may

not be required when available remedies provide no opportunity for adequate relief, an administrative appeal would be futile, or if plaintiff has raised a substantial constitutional question. *Howell*, 72 F.3d at 291. The Immigration Court and Board of Immigration Appeals are courts of limited jurisdiction that cannot consider constitutional claims. *See, e.g., Arango–Aradondo v. INS,* 13 F.3d 610, 614 (2d Cir.1994); *Massieu v. Reno,* 915 F.Supp. 681, 691 (D.N.J.1996). Therefore, it would undoubtedly be futile to await further administrative hearings when those proceedings cannot in any way address the constitutional claims at issue in this case. *See, e.g., Barton v. Ashcroft,* 171 F.Supp.2d 86 (D.Conn.2001) (finding that exhaustion of administrative remedies would be futile on equal protection claim because of immigration judge's and BIA's limited authority); *Cabreja–Rojas,* 999 F.Supp. at 496 (finding exhaustion not required on a constitutional claim due to BIA's limited jurisdiction); *Kai Wu Chan v. Reno,* 932 F.Supp. 535 (S.D.N.Y.1996) (same).

■ The cases cited by the Government on this issue are inapposite. In those cases, the petitioner was challenging the legality of his deportation or the statute under which his deportation was being sought. *See, e.g., Massieu v. Reno,* 91 F.3d 416, 419 (3d Cir.1996) (holding that 8 U.S.C. § 1105a of the INA specifically required administrative exhaustion); *Yi v. Maugans,* 24 F.3d 500 (3d Cir.1994) (same); *United States ex rel. Tsermegas v. Neelly,* 210 F.2d 876 (7th Cir.1954) (challenging deportation order through habeas when an appeal was already made to BIA). Respondents present no evidence that a habeas petition on constitutional grounds that are collateral to the merits of the underlying deportation should be denied due to the principle of exhaustion.

The administrative process allows for no remedy of injuries inflicted by the invocation of the automatic stay. It would be ironic indeed if this Court were to refuse to review the constitutionality of the automatic stay regulation when Petitioner's precise argument is that no body exists to review the provision. This Court fully understands the importance of a strong administrative structure for dealing with immigration matters and the need to prevent circumvention through the hasty appropriation of jurisdiction. However, it would be foolish to require further proceedings that can do nothing to resolve the issue presented, especially as Petitioner remains incarcerated. The case law understandably recognizes that the exhaustion of administrative remedies is unnecessary when it would serve no purpose, and this Court agrees with that conclusion. As exhaustion provides no obstacle to this Court's determination, the merits of Petitioner's claim should be considered.

## B. *Constitutional Claims*

Plaintiff argues that 8 C.F.R. § 3.19(i)(2) effectively provides for the mandatory detention of aliens by automatically and indefinitely staying the individualized bond determination made by an Immigration Judge, and thereby violates both his procedural and substantive due process rights.

■ At the outset, it is important to respond to assertions that this Court's jurisdiction is circumscribed in making its determination due to the sweeping powers granted to the other government branches in the field of immigration. One must, however, distinguish between the substantive power of the Executive branch over immigration issues, an area in which it indeed has plenary power, and the *means* the government has chosen to exercise that plenary power, to which no executive deference is necessary. *See, e.g., Zadvy-*

*das v. Davis,* 533 U.S. 678, 695, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (noting the government's plenary power to expel immigrants, but stating that "Congress must choose a constitutionally permissible means of implementing" its immigration power); *INS v. Chadha,* 462 U.S. 919, 940–941, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (striking down legislative veto and noting that "what is challenged here is whether Congress has chosen a constitutionally permissible means of implementing that power"). As the Third Circuit has stated in a similar legal posture, "We defer only to the executive insofar as it is expert in matters of national security, not constitutional liberties." *North Jersey Media Group, Inc. v. Ashcroft,* 308 F.3d 198 n. 15 (3rd Cir.2002). Having full appreciation for the necessary role of the courts in deciding this matter, each of Petitioner's constitutional claims will now be addressed in turn.

### 1. *Substantive Due Process*

■ The Fifth Amendment guarantees that no person shall be deprived of liberty without due process of law. This due process guarantee has a substantive component that forbids the government from infringing upon certain "fundamental" liberty interests *at all,* no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest. *Reno v. Flores,* 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (emphasis in original). Substantive due process "prevents the government from engaging in conduct that shocks the conscience ... or interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (internal citations omitted).

■ Substantive due process protections apply to permanent resident aliens as well. *See, e.g., Mathews v. Diaz,* 426 U.S. 67, 77, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) ("There are literally millions of aliens within the jurisdiction of the United States ... [t]he Fifth Amendment as well as the Fourteenth Amendment, protects every one of these persons from deprivation of life, liberty, or property without due process of law.") (internal citations omitted). *See also Wong Yang Sung v. McGrath,* 339 U.S. 33, 48–51, 70 S.Ct. 445, 94 L.Ed. 616 (1950); *Wong Wing v. United States,* 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140 (1896). Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis,* 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). Government detention violates the Due Process Clause unless it is ordered in a criminal proceeding with adequate procedural protections, or in non-punitive circumstances "where a special justification ... outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas,* 533 U.S. at 690, 121 S.Ct. 2491.

■ In effect, the automatic stay provision renders the Immigration Judge's bail determination an empty gesture. Although the right to bail may not be a constitutional imperative, the "right to bail is a fundament of liberty underpinning our criminal proceedings, and is an essential guardian of the presumption of innocence." 8A Am.Jur.2d *Bail and Recognizance* § 11 (2003). As indicated by the many state constitutions that protect this important interest,[3] the right to bail has "roots deep

---

3. For example, Article I, paragraph 11 of the Constitution of New Jersey states in pertinent part that "All persons shall, before conviction, be bailable by sufficient sureties, except for

in our constitutional system" *Petition of Johnson,* 72 S.Ct. 1028, 1030, 96 L.Ed. 1377 (1952).

In light of the longstanding importance of this right, the Court will not casually dismiss it.

In the case at bar, the Government has not shown that any "special justification" exists which outweighs Petitioner's constitutional liberties so as to justify his continued detention without bail. *See, e.g., Zadvydas,* 533 U.S. at 690, 121 S.Ct. 2491 (upon examining the flight prevention and dangerousness justifications of certain "removable" aliens, finding no sufficiently strong special justification for indefinite civil detention under 8 U.S.C. § 1231(a)(6)); *Rosales–Garcia v. Holland,* 322 F.3d 386, 411 (6th Cir.2003) (same discussion concerning "excludable" aliens). Petitioner herein pled guilty to the offense of endangering the welfare of a child nearly ten years ago, for which he completed his probation without any violations. He has lived a peaceful life ever since, not having been arrested for any crimes nor accused of any suspicious activity. The Government has conceded that Petitioner is not a threat to national security. (Tr. of Proceedings, Oct. 15, 2003). Petitioner is married with four children, all of whom are lawful permanent residents, and is gainfully employed as a professional welder and mechanic. The Immigration Judge already held its hearing and determined that in light of Petitioner's lack of recidivism, his eligibility to apply for discretionary relief from deportation, his family ties to the community, and the sentence he received for his offense, he should be released on a $5,000 bond. (Thaker Aff.,

Exh. E). As previously mentioned, the purpose for the automatic stay provision is to prevent the alien from fleeing and to protect the public from harm. The bond determination made by the Immigration Judge has already addressed these underlying concerns. The Government offers no reason to believe that Petitioner may flee to avoid deportation, or that he might pose a potential danger to the community.

Moreover, this Court does not find that in this particular case a "compelling interest" exists to keep Petitioner indefinitely detained without bail by virtue of the automatic stay. In the context of Petitioner's particular circumstances, application of the automatic stay is certainly "excessive in relation to the regulatory goal Congress sought to achieve." *Salerno,* 481 U.S. at 747, 107 S.Ct. 2095. Petitioner remains detained for an indeterminate period pursuant to the unilateral determination by a BICE official, despite the findings of an Immigration Judge that he be released. As "aliens do have a substantive due process right to be free of arbitrary confinement pending deportation proceedings," *Doherty v. Thornburgh,* 943 F.2d 204, 209 (2d Cir.1991), one cannot characterize Petitioner's continued confinement as anything but arbitrary. The Government's actions interfere with rights of Petitioner that are "implicit in the concept of ordered liberty." Accordingly, this Court finds that Petitioner is currently detained in violation of substantive due process.

2. *Procedural Due Process*

■■■■■ Even if this Court had refused to find a substantive due process violation, Petitioner would still be able to assert a

---

capital offenses when the proof is evident or presumption great."; *see generally,* 8A Am. Jur.2d *Bail and Recognizance* § 11 (2003) (noting that "Many state have generally guaranteed, by constitutional or statutory provi-

sions, and as implemented by court rules, that all persons charged with a crime shall be bailable by sufficient sureties, except in particular cases.")

procedural due process claim. When government action that deprives a person of liberty survives substantive due process scrutiny, it must still be implemented in a fair manner. *Salerno,* 481 U.S. at 746, 107 S.Ct. 2095. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (internal citations omitted). This procedural due process requirement applies to deportation proceedings for aliens as well. *See Flores,* 507 U.S. at 306, 113 S.Ct. 1439 ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."); *Beshli,* 272 F.Supp.2d at 522 (same). Therefore, certain procedural due process protections must be afforded to aliens in deportation hearings. *See, e.g., Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) (resident alien "entitled to a fair hearing when threatened with deportation").[4]

To determine what process is due Petitioner, this Court should consider 1) the private interest affected by the government action; 2) the risk that current procedures will cause an erroneous deprivation of the private interest, and the extent to which that risk could be reduced by additional safeguards; and 3) the government's interest in maintaining the current procedures, including the function involved and the fiscal and administrative burdens that the substitute procedural requirement would entail. *Mathews v. Eldridge,* 424

U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

The private interest at stake here, the right to be free of detention of indefinite duration pending a bail determination, is "without question, a weighty one." *Plasencia,* 459 U.S. at 34, 103 S.Ct. 321. Indeed, freedom from confinement is a liberty interest of the "highest constitutional import." *St. John v. McElroy,* 917 F.Supp. 243, 250 (S.D.N.Y.1996). The "[g]overnment's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest." *Salerno,* 481 U.S. at 748, 107 S.Ct. 2095. This is not such a circumstance. Unlike the situation presented in *Salerno,* the Government has not proved that Petitioner presents an identified and articulable threat to an individual or the community so as to justify his continued detention without any judicial review of the need for a stay of the bail determination. *Id.* at 751, 107 S.Ct. 2095.

In addition, the risk of the erroneous deprivation of liberty is substantial as the application of the automatic stay provision here was the result of a unilateral determination made by a BICE district director which overruled the bail decision made by an Immigration Judge. Unlike the typical requests for a stay which require a demonstration of the "likelihood of success on the merits," the automatic stay provision demands no such showing; in fact, as previously discussed, it was enacted precisely to avoid the need for such an individualized determination. Aliens like Petitioner can

---

4. During oral arguments, the Government referred to *Smith v. Ashcroft,* 295 F.3d 425 (4th Cir.2002) in support of its contention that Petitioner has no liberty right to discretionary relief under § 212(c) of the Immigration and Naturalization Act, 8 U.S.C. § 1182(c). (Tr. of Proceedings, Oct. 15, 2003). As a result of *Smith,* the Government argues that Petitioner cannot assert its due process claim. However-

er, this argument misreads Petitioner's allegations. Petitioner is not asserting a due process claim under 212(c), but rather under the automatic stay provision of § 3.19(i)(2). Whether an alien has a vested liberty interest in obtaining discretionary relief under § 212(c) is not an issue presently before this Court. Accordingly, *Smith* provides no guidance for the present case.

consequently remain in detention no matter how frivolous the appeal by the Government. Moreover, the procedural safeguards that exist within the Immigration Judge's hearing reduce the risk of that erroneous liberty deprivation. The Government's interest in invoking the automatic stay here is not great—since his probation has ended, Petitioner has been "on the loose" for five years without causing harm to the community and without indicating that he might flee if subject to deportation. Finally, the burden of vacating the automatic stay is minimal as an Immigration Judge has already made a bail determination and there is little reason to believe that any additional burden would weigh upon the government as a result of allowing the Immigration Judge to maintain his decision. If the BICE needs to keep an alien detained despite the Immigration Judge's finding, the Government need only seek an emergency stay under 8 C.F.R. § 3.19(i)(1) showing that it was likely to succeed on its appeal and would suffer irreparable harm in the meantime. In contrast, the automatic stay provision authorizes stays without any such showing, and even if such a showing cannot be made.

In this Circuit, courts have held that a person raising a due process challenge to the conduct of his deportation proceeding generally must demonstrate both that: 1) he was prevented from having a reasonable opportunity to present evidence and 2) any such error resulted in prejudice by affecting the outcome of the proceeding. *See Xu Yong Lu v. Ashcroft,* 259 F.3d 127, 131 (3d Cir.2001). Petitioner makes no claim that he was prevented from presenting evidence in his bond hearings. This is because Petitioner's rights were likely given full accord in those hearings. The provision of these rights, however, were effectively rendered meaningless by the implementation of the automatic stay provision. A fair hearing is only "meaningful" if the results of that hearing are respected, otherwise it is merely a formality with no legal significance. The Government cannot withstand a procedural due process objection by arguing that due process is provided, then given no import. Indeed, the automatic stay provision nullifies the very purpose of giving aliens procedural protections in deportation proceedings. It produces a patently unfair situation by "tak[ing] the stay decision out of the hands of the judges altogether and giv[ing] it to the prosecutor who has by definition failed to persuade a judge in an adversary hearing that detention is justified." David Cole, *In Aid of Removal: Due Process Limits on Immigration Detention,* 52 Emory L.J. 1003, 1031 (2002). The "errors" in process engendered by the automatic stay provision certainly resulted in prejudice and affected the outcome of the proceeding by superceding the Immigration Judge's ruling. This Court finds, therefore, that the invocation of the automatic stay provision by the Government under the circumstances of this case violates Petitioner's procedural due process rights.

### C. *The Kim Decision and its Progeny*

This Court is mindful of the recent Supreme Court holding in *Demore v. Kim,* 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003), which the Government looks to for support of its position. In *Kim,* the Court upheld the constitutionality of the mandatory detention provision found in 8 U.S.C § 1226(c). Upon noting that "Congress may make rules as to aliens that would be unacceptable if applied to citizens," *Id.* at 1717, the Court recognized the "longstanding view that the Government may constitutionally detain deportable aliens during the limited period neces-

sary for their removal proceedings." *Id.* at 1719.

At the outset, it should be noted that the *Kim* holding and analysis dealt with the mandatory detention provision under 8 U.S.C. § 1226(c) rather than the discretionary provision under 8 U.S.C. § 1226(a), or the automatic stay provision of 8 C.F.R. § 3.19(i)(2). This is not a trivial distinction; § 1226(c) mandates detention of aliens who have committed certain crimes, including any "aggravated felony" and any two "crimes involving moral turpitude" whereas § 1226(a) applies to those residual cases not covered by § 1226(c). There would have been no need for different provisions if congressional intent was to treat aliens in either category identically under the law. Additionally, the constitutionality of the automatic stay provision was not addressed at all in *Kim.* Although these differences should suffice to distinguish *Kim* from the present case, because some of the assertions made in *Kim* could tend to support the Government's claim if applied broadly, it is important to further flesh out these distinctions.[5]

The Government argues that if under *Kim* the detention of aliens is permissible during removal proceedings, *a fortiori,* detention must be permissible during a subset of those proceedings, namely, the bail determination. (Tr. of Proceedings, Oct. 15, 2003). This argument possesses some appeal to logic on its surface. However, it fails to recognize that the § 1226(c) removal proceedings discussed in *Kim* entitle a detainee to the immediate provision of a

"*Joseph* hearing" in which the "detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the INS is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention." *Kim,* —— U.S. at —— n. 3, 123 S.Ct. at 1713 n. 3. The respondent alien in *Kim* had specifically foregone his opportunity to this hearing that would have provided him with various due process protections. *Id.* at 1712. Petitioner's case is materially different from the one described in *Kim* in that Petitioner actually requested and received a proceeding to discuss his release pending appeal. Thus, unlike the *Kim* situation, Petitioner demanded the hearing to which he was entitled, but the results of that hearing were nullified by the automatic stay provision. It is not clear that the *Kim* decision would have been resolved the same way if it had been brought pursuant to the § 3.19(i)(2) automatic stay provision, under which even if an Immigration Judge were to find that a detainee was "not convicted of the predicate crime" or in any way not subject to § 1226(a), his decision would still be stayed upon the unilateral discretion of the BICE pending appeal.

Furthermore, rather than upholding the automatic stay, the discussion in *Kim* suggests that the Court would be greatly troubled by a provision like § 3.19(i)(2) that detains individuals without any discernible termination point. *Kim's* holding specifically mentioned this concern, stating that "Congress ... may require that persons

---

**5.** Another Supreme Court case relied upon in *Kim* for support should also be distinguished from Petitioner's case. In *Carlson v. Landon* 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952), the Court considered a challenge to the detention of aliens deportable because of their participation in Communist activities without an individualized finding of likely future dangerousness. It found that there was

no due process violation "where there is reasonable apprehension of hurt from aliens charged with a philosophy of violence against this Government." *Id.* at 535, 72 S.Ct. 525. In marked contrast, the Immigration Judge in this case has specifically found that there was no such future dangerousness in making its bail determination.

... be detained for the *brief period necessary* for their removal proceedings." *Kim,* —— U.S. at ——, 123 S.Ct. at 1712 (emphasis added). The Court justified its conclusion only after referring at length to data concerning the duration of aliens detention under § 1226(c), and finding that detention lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal. *Id.* at 1721. The length of an alien's detention has often played a critical role in due process considerations. *See, e.g., Zadvydas,* 533 U.S. at 690, 121 S.Ct. 2491 (finding that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem"); *Flores,* 507 U.S. at 314, 113 S.Ct. 1439 (noting that the juvenile aliens under scrutiny would remain in INS custody an average of only 30 days, and stated that particular abuses to that duration could be remedied under habeas corpus).

This Court has been provided with no similar assurances that Petitioner will remain detained for only a brief period. The automatic stay provision is allegedly "a limited measure and is limited in time-it only applies where the Service determines that it is necessary to invoke the stay procedure pending appeal, and the stay only remains in place until the Board has had the opportunity to consider the matter." Executive Office for Immigration Review; Review of Custody Determination, 66 Fed.Reg. 54909 (Oct. 31, 2001). This Court is not persuaded. What may be considered "limited" to the Government assuredly feels much longer to a lawful permanent resident who has been incarcerated despite an Immigration Judge's decision to release him on bond. Having no basis to believe that Petitioner will soon be released, this Court refuses to assume it without supporting evidence.

Rather than the Government detaining an alien *until* an individualized determination can be made, as in *Kim,* in this case the Government is detaining an alien *even though* an individualized determination has been made stating that the alien should be released on bond. The invocation of the automatic stay provision effectively converts any alien detained pursuant to the discretionary detention provision of § 1226(a) into one held pursuant to the mandatory detention provision of § 1226(c). Such an application of § 3.19(i)(2) seems to fly in the face of congressional intent. If Congress wanted to make detention mandatory for all aliens who have committed crimes, it would not have devised the present bifurcated system in which mandatory detention is imposed only on a limited class of aliens, presumably those considered most dangerous. As Congress specifically exempted aliens like Petitioner from the mandatory detention of § 1226(c), it is unlikely that it would have condoned this back-end approach to detaining aliens like Petitioner through the combined use of § 1226(a) and § 3.19(i)(2). Moreover, this "conversion" to mandatory detention is not done through any process resembling a hearing that provides safeguards to ensure its fairness, accuracy and consistency with the Constitution, nor through any required showing of future dangerousness or likelihood of escape, but through the mere filing of a notice of appeal.

This Court finds particularly persuasive several recent federal decisions that specifically address the continued detention of aliens pursuant to the automatic stay provision. In *Bezmen v. Ashcroft,* 245 F.Supp.2d 446 (D.Conn.2003), an immigrant was detained pursuant to § 1226(a) and the automatic stay provision of 3.19(i)(2) despite the Immigration Judge's decision to release him on bond. The *Bezmen* court also had serious reservations

about the Government's application of § 3.19(i)(2), stating that:

> [T]he regulation fails to impose any time parameters for the resolution of the appeal, nor does it identify any objective that the approval be expedited. It allows the INS to unilaterally override a decision of an [Immigration Judge] ... The government is unable to direct this Court to any requirement ... that the BIA and the Attorney General rule on such appeals within any particular time period. Such a process without ascertainable end points during which [Petitioner] remains detained, results in an indefinite detention under 8 C.F.R. § 3.19(i)(2) limited only by the BIA's and the Attorney General's decision of when to decide.

*Id.* at 449–450.

Similarly, in *Almonte–Vargas v. Elwood,* 2002 WL 1471555 (E.D.Pa. June 28, 2002), petitioner remained indefinitely detained based on the invocation of the automatic stay pending the appeal of his individualized bail hearing which allowed for release on bond.[6] The court granted habeas corpus upon finding that the Government's use of the automatic stay violated due process. It declared that "due process is not satisfied where the individualized custody determination afforded to Petitioner was effectively a charade." *Id.* at *5. It further stated:

> [T]he provision staying a release order pending appeal is not inherently violative of due process, provided there is some reasonable time limit on the duration of the appeal and the resulting detention. However, as other courts have

observed, there is nothing in the automatic stay provision of 8 CFR § 3.19(i) to limit the time the BIA takes to resolve the appeal. Coupled to the unavailability of having the stay order reviewed, petitioner's liberty interests are in a state of suspended animation.

*Id.* *5

*See also Uritsky v. Ridge,* 286 F.Supp.2d 842, ——, 2003 WL 22299935, at *5 (E.D.Mich.2003) (court released petitioner whose bond determination was stayed pursuant to § 3.19(i)(2) concluding that "under the Fifth Amendment, Petitioner is entitled to an individualized determination that his detention is necessary to further a sufficiently compelling governmental need. Because the Immigration Court, in fact, already has found that Petitioner's continued detention is not justified by such a need, the individualized determination requirement has been met.")

This Court's concerns over the application of the automatic stay provision to Petitioner mirror those of the courts in *Bezman, Almonte–Vargas,* and *Uritsky.* Petitioner remains indefinitely detained based on the unilateral determination of the BICE. He is afforded no *Joseph*-like hearing where he can contest whether the stay is appropriate under the circumstances of his case, nor does he have the ability to hasten the termination of his detention. The Government has provided no specific parameters as to when a determination will be made on the appeal of the bail decision. Although the Government during oral argument referred to an "internal understanding" that places these bond determinations on a 30–45 day expedited time line (Tr. of Proceedings, Oct. 15,

---

**6.** Because *Almonte–Vargas* was decided under pre-*Kim* jurisprudence, and relied in part upon decisions overruled by *Kim,* there may be questions as to its continued validity. However, because the *Almonte–Vargas* court

recognized its different procedural posture than those cases, 2002 WL 1471555 at *2, and that difference was material to its holding, any legal reliance on the part of this Court would still survive the *Kim* decision.

2003), it has provided no evidence of its existence, nor that if it did exist, how often the BIA complies with this policy. This Court refuses to condone the continued violation of Petitioner's constitutional rights and must fashion a remedy accordingly.

## CONCLUSION

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno*, 481 U.S. at 755, 107 S.Ct. 2095. Detention after a bail hearing rendered meaningless by an automatic stay likewise should not be the norm. Congress retains broad power to create substantive immigration law to which the judicial branch must generally defer. *Patel v. Zemski*, 275 F.3d 299, 307 (3d Cir.2001). However, the plenary power of Executive and Legislative Branch decision-making in immigration law is subject to important constitutional limitations. *Zadvydas*, 533 U.S. at 695, 121 S.Ct. 2491. These limitations prove overwhelming in this case. Consequently, this Court holds that the continued detention of Petitioner without judicial review of the automatic stay of the bail determination, despite the Immigration Judge's decision that he be released on bond, violates Petitioner's procedural and substantive due process constitutional rights.

For the reasons set forth above, this Court vacates the automatic stay of Immigration Judge Garcy's bail determination made on August 14, 2003. However, the vacation of the automatic stay will itself be stayed for 30 days to give the Government an opportunity to seek an emergency stay

from the Board of Immigration Appeals under 8 C.F.R. § 3.19(i)(1).[7] This emergency stay provision is appropriate as it "presents a narrowly tailored, less restrictive means whereby the government's interest in seeking a stay of the custody redetermination hearing may be protected without unduly infringing upon [petitioner]'s liberty interest." *Bezmen*, 245 F.Supp.2d at 451. If the Government does not apply for the aforesaid emergency stay within 30 days, Petitioner must be permitted to post bond and be released in accordance with the rulings and conditions set forth in the August 14 Immigration Judge's bail determination.

It is so ordered.

---

7. This provision states:
(i) Stay of custody order pending Service appeal—(1) General emergency stay authority. The Board of Immigration Appeals (Board) has the authority to stay the order of an immigration judge redetermining the conditions of custody of an alien when the Service appeals the custody decision. The Service is entitled to seek an emergency stay for the Board in connection with such an appeal at any time.