**Halil BEZMEN**

v.

**John ASHCROFT, et al.**

**No. 3:02–CV–1389(JBA).**

United States District Court, D. Connecticut.

Feb. 18, 2003.

Kurt W. Hansson, Paul R. Dehmel, Paul, Hastings, Janofsky & Walker, Stamford, CT, Richard B. Chisam, Paul, Hastings, Janofsky & Walker, Atlanta, GA, Michael P. DiRaimondo, DiRaimondo & Masi, Melville, NY, for Petitioner.

Deborah R. Slater, Lisa E. Perkins, U.S. Attorney's Office, Hartford, CT, for Respondent.

### Ruling on Petition for Writ of Habeas Corpus [Doc. # 2]

ARTERTON, District Judge.

Halil Bezmen, whose final order of removal for remaining in the United States longer than permitted (8 U.S.C. § 1227(a)(1)(B)) is on appeal, has filed a petition under 28 U.S.C. § 2241 requesting relief from the automatic stay invoked by the Immigration and Naturalization Service ("INS") as provided in 8 C.F.R. § 3.19(i)(2). For the reasons set forth below, the petition is GRANTED and the automatic stay is dissolved effective 10am Friday February 21, 2003, which will afford the INS opportunity to seek and obtain an emergency stay under 8 C.F.R. § 3.19(i)(1) of the bond redetermination ordered by Immigration Judge ("IJ") Michael Strauss in favor of Bezmen. If no emergency stay is obtained by the INS by 10am Friday, February 21, 2003, the INS is ordered to permit Bezmen to post bond and be released in accordance with IJ Strauss's decision and order dated August 7, 2002.

### I Background [1]

Bezmen, a native and citizen of Turkey, at one time possessed a lawful immigrant visa but that visa was revoked and Bezmen was arrested and taken into custody by the INS on July 26, 2002. At that time, the INS determined that Bezmen was a serious flight risk and ordered him held without bond. Bezmen subsequently requested a bond redetermination hearing before an IJ, which was held on July 31, 2002.

On August 7, 2002, IJ Strauss issued two written decisions. The first concluded: 1) Bezmen was ineligible for an adjustment of status (immigrant to permanent resident); 2) Bezmen was not eligible for asylum; 3) Bezmen was not eligible for withholding of removal under § 241(b)(3); and 4) Bezmen was not eligible for protection under the Torture Convention. The IJ also denied Bezmen's application for voluntary departure and ordered that Bezmen be removed to Turkey. The second decision ordered Bezmen's release upon the posting of $200,000 bond, finding such amount sufficient incentive to prevent Bezmen from fleeing and to secure his presence at future INS proceedings:

---

1. Bezmen and the INS have a lengthy procedural history involving varied and multiple issues and claims. The Court summarizes only that part of the history relevant to ruling on petitioner's as-applied constitutional challenge to 8 C.F.R. § 3.19(i)(2).

The next issue is whether there is a bond amount which would be sufficient to allow for the respondent's appearance if he is released. The respondent, at least at one time, was one of the wealthiest persons in Turkey. The respondent states that he now has about $250,000 and about $2 million in investments in start up companies. The Court finds that the respondent would appear if a significant bond is set. The respondent is a sixty-three year old man with some health issues. He has made some significant investments in companies in the United States. It would not be easy for him to remain a fugitive in the United States. The Court finds that a bond in the amount of $200,000 (two hundred thousand) would be sufficient to allow for the respondent to appear for removal or at any further hearings.

Decision in Pet.'s Mem. Ex. A at 3.

On August 8, 2002, the INS timely filed a Notice of Service Intent to Appeal, invoking the automatic stay provision of 8 C.F.R. § 3.19(i)(2), and thus prevented release when Bezmen attempted to post the bond. The INS timely filed a notice of appeal to the BIA on August 16, 2002. Petitioner appealed both the amount of the bond set by the IJ, and the IJ's substantive rulings. All appeals including custody redetermination have been pending for over six and one half months, during which Bezmen has remained in custody.

Bezmen is not an aggravated felon subject to mandatory detention under 8 U.S.C. § 1226(c). He is detained pursuant to 8 U.S.C. § 1226(a). The INS makes no claim that Bezmen is a terrorist or otherwise a danger or threat to national security, the public, or anyone else, rather the government opposes bond solely on the basis that it considers Bezmen a serious flight risk. Bezmen principally contends that, as applied to him, 8 C.F.R. § 3.19(i)(2) violates his right to substantive due process under the Fifth Amendment to the United States Constitution.

## II  Jurisdiction

■ The government argues that this Court lacks jurisdiction to entertain Bezmen's challenge to the invocation of the stay provision of 8 C.F.R. § 3.19(i)(2) because such invocation constitutes a discretionary administrative determination not subject to review. *Cf.* 8 U.S.C. § 1226(e)("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."). This argument is without merit. Bezmen here does "not seek review of the Attorney General's exercise of discretion; rather, [he] challenge[s] the extent of the Attorney General's authority [under the stay provision]. And the extent of the authority is not a matter of discretion." *Zadvydas v. Davis,* 533 U.S. 678, 688, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001); *see also Sol v. INS,* 274 F.3d 648, 651 (2d Cir.2001)(quotation omitted)("A petition for habeas corpus may be used to challenge incarceration or orders of deportation as being in violation of the Constitution or laws of treaties of the United States."). As Bezmen challenges whether the decision to prolong his detention under 8 C.F.R. § 3.19(i)(2) passes constitutional muster, this Court has jurisdiction over his habeas petition.

## III  Analysis

■ The Due Process Clause of the Fifth Amendment prohibits the Government from depriving any person of liberty without due process of law. "Freedom from imprisonment—from government

custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas,* 533 U.S. at 690, 121 S.Ct. 2491. Substantive due process protections from arbitrary confinements apply to aliens, notwithstanding their residency status. *Zadvydas,* 533 U.S. at 693, 121 S.Ct. 2491 ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). Governmental detention in civil proceedings is only permissible in "certain special and narrow non-punitive circumstances ... where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (quotations and citation omitted). The present proceedings, as acknowledged by the government, are civil. *See* Gov't.'s Resp. at n. 14 ("The detention authorized under ... the automatic stay provision, 8 C.F.R. § 3.19(i)(2), is also civil and regulatory in nature and non-punitive."). Even civil confinement of aliens must be limited both with respect to the length of detention, *see id.* at 690, 121 S.Ct. 2491, as well as to the underlying purpose justifying the detention, *see id.* ("[W]here detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed.")(quotation omitted).

Bezmen's release on bond has been automatically stayed under 8 C.F.R. § 3.19(i)(2), which provides,

(i) Stay of custody order pending Service appeal-

2) Automatic stay in certain cases. In any case in which the district director has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon the Service's filing of a Notice of Service Intent to Appeal Custody Redetermination (Form EOIR–43) with the immigration court within one business day of the issuance of the order, and shall remain in abeyance pending decision of the appeal by the Board of Immigration Appeals. The stay shall lapse if the Service fails to file a notice of appeal with the Board in accordance with § 3.38 within ten business days of the issuance of the order of the immigration judge. If the Board authorizes release (on bond or otherwise), that order shall be automatically stayed for five business days. If, within that five-day period, the Commissioner certifies the Board's custody order to the Attorney General pursuant to § 3.1(h)(1) of this chapter, the Board's order shall continue to be stayed pending the decision of the Attorney General.

Although the automatic stay provision specifies deadlines within which the INS must pursue its appeal of an order authorizing release (the triggering notice of intent must be filed in one business day and the notice of appeal within ten business days), the regulation fails to impose any time parameters for the resolution of the appeal, nor does it identify any objective that the approval be expedited. It allows the INS to unilaterally override a decision of an IJ and a subsequent affirmance by the BIA in favor of Attorney General review. The government is unable to direct this Court to any requirement—statutory, regulatory or internal—that the BIA and the Attorney General rule on such appeals within any particular time period. Such a process without ascertainable end points during which Bez-

men remains detained, results in an indefinite detention under 8 C.F.R. § 3.19(i)(2), limited only by the BIA's and the Attorney General's decision of when to decide.

Further, far from only applying in narrow and special circumstances and beyond the stated reasons for its promulgation, the automatic feature of 8 C.F.R. § 3.19(i)(2), as amended on October 31, 2001, applies to non-criminal aliens who are neither connected to activities of terrorism nor otherwise pose a threat to national security or the public. Prior to October 31, 2001, the automatic stay provision of 8 C.F.R. § 3.19(i)(2) applied narrowly to certain criminal aliens subject to mandatory detention. *See* 66 FR 54910.[2] Thus, in order to hold aliens like Bezmen, who were detained pursuant to the Attorney General's discretion under 8 U.S.C. § 1226(a) but were granted release on a bond redetermination by an IJ, the INS had to seek an emergency stay of the bond redetermination from the BIA pursuant to 8 C.F.R. § 3.19(i)(1). Concerned that delays attendant to the administration of the emergency stay provision could require "the [INS] ... to release an alien that it believes is a threat to national security or the public safety....," 66 FR at 54910, the October 31, 2002 amendment was specifically enacted to expand the scope of the automatic stay provision to cases involving aliens not subject to mandatory detention. *Id.* As a result, the automatic stay provision now applies in "any case in which the district director has determined that an

alien should not be released or has set a bond of $10,000 or more," and the INS may unilaterally stay by timely filing Form EOIR–43 "any order of the immigration judge authorizing release." Because the INS makes the initial custody and bond determination, the agency effectively predetermines in each individual case its ability to stay any bond ordered by an IJ by making a no release determination or setting bond at $10,000 or more. The relative administrative ease provided by this regulatory scenario is noted in the publication of the INS interim rule issued on October 31, 2001:

> This change will ... avoid the necessity for a case-by-case determination of whether a stay should be granted in particular cases in which the Service had previously determined that the alien should be kept in detention and no conditions of release would be appropriate.

66 FR at 54910. Thus, as demonstrated by Bezmen's case, by initial detention determination and subsequent use of the automatic stay, the INS may effectively metamorphose the custody of any deportable alien into detention without effective bona fide individualized bond determination for an indeterminate period of time.[3] Such scope cannot be characterized as narrow or applying only to special circumstances and clearly exceeds the rationale for promulgating the amendment by including aliens such as petitioner, who is not al-

---

**2.** See *Almonte–Vargas v. Elwood*, No. Civ.A. 02–CV–2666, 2002 WL 1471555, at *5 n. 11 (June 28, 2002) for discussion of the utility of the automatic stay covering the period in which aliens subject to mandatory detention under 8 U.S.C. § 1226(c) would not be eligible to be released on bond by an IJ.

**3.** That kind of detention analogizes closely to the mandatory detention without the possibility of an individualized bond hearing mandat-

ed by 8 U.S.C. § 1226(c), which many courts have found to exceed permissible constitutional limits. *See e.g., Patel v. Zemski*, 275 F.3d 299. The only court to date to address the constitutionality of the automatic stay provision found it unconstitutional as constructively denying the alien the individualized hearing to which she was entitled in the Third Circuit under *Patel*, 275 F.3d 299. *See Almonte–Vargas*, 2002 WL 1471555.

leged to be a threat to national security, the public, or anyone else.

The automatic stay provision as applied to Bezmen has resulted in his indefinite detention for now more than six and one half months with the government unable to offer any assurance of when the BIA and/or the Attorney General will conclude review, except to represent that the median time required for a BIA decision on a merits appeal has been 114 days. *See* Gov't.'s Resp. at p. 17. Moreover, the stated goals for the interim detention regulation at issue, preventing the release of aliens who pose a threat to national security or the public, are not served as Bezmen is not claimed by the INS to represent such a threat. Therefore, juxtaposed against Bezmen's right to be free from governmental detention under the Fifth Amendment's Due Process Clause, the INS' invocation of the stay in this case cannot continue to stand. Because with reasonable temporal limitations to the appeal process and/or limitations with respect to specific classes of aliens or demonstration of a risk sought to be covered, the application of the stay provision might conform to the operative principles of *Zadvydas,* the Court does not conclude that 8 C.F.R. § 3.19(i)(2) is facially unconstitutional.

As acknowledged by petitioner's counsel at oral argument, merely because the automatic stay can not be continued under the circumstances of this case does not mean that Bezmen must be given immediate opportunity to post the bond ordered by the IJ. Rather, the emergency stay provision found in 8 C.F.R. § 3.19(i)(1) presents a narrowly tailored, less restrictive means whereby the government's interest in seeking a stay of the custody redetermination decision may be protected without unduly infringing upon Bezmen's liberty interest.

## IV   Conclusion

The petition is GRANTED and the automatic stay is dissolved effective 10am Friday February 21, 2003, which will afford the INS opportunity to seek and obtain an emergency stay under 8 C.F.R. § 3.19(i)(1) of the bond redetermination ordered by Immigration Judge ("IJ") Michael Strauss in favor of Bezmen. If no emergency stay is obtained by the INS by 10am Friday, February 21, 2003, the INS is ordered to permit Bezmen to post bond and be released in accordance with IJ Strauss's decision and order dated August 7, 2002.

IT IS SO ORDERED.