**Giovanni PISCIOTTA, Petitioner**

v.

**John ASHCROFT, Attorney General of the United States, et al., Respondents.**

**Civ. No. 03–5132 (JAG).**

United States District Court, D. New Jersey.

Jan. 9, 2004.

Jerard A. Gonzalez, Esq., Meyner & Landis, Newark, NJ, for Petitioner.

Christopher J. Christie, United States Attorney, Caroline A. Sadlowski, Assistant U.S. Attorney, Newark, NJ, for Respondents.

## *OPINION*

GREENAWAY, District Judge

This matter comes before the Court upon the application of Petitioner Giovanni Pisciotta ("Petitioner") seeking a writ of habeas corpus, pursuant to 28 U.S.C.

§ 2241, and injunctive and declaratory relief releasing Petitioner from detention by the Department of Homeland Security ("DHS") during the pendency of his removal proceedings. Petitioner asserts that his detention violates his Fifth Amendment right to due process and deprives him of the protection of the Eighth Amendment prohibition against excessive bail. Further, Petitioner argues that these rights continue to be violated as a result of his ongoing detention. Specifically, Petitioner claims that his rights were violated when: (1) on July 9, 2003, shortly after the June 20, 2003 reopening of his removal proceedings, the government revoked the terms of its 1996 determination that Petitioner should be released on $12,000 bond and instead detained him without setting bond; and (2) on July 14, 2003, upon an order from an Immigration Judge ("IJ") releasing Petitioner on $12,000 bond, the government stayed the order, pursuant to 8 C.F.R. § 1003.19(i)(2), pending its appeal to the Bureau of Immigration Appeals ("BIA").

### FACTUAL AND PROCEDURAL HISTORY

Petitioner is a citizen of Italy and was admitted to the United States as a legal permanent resident on May 27, 1967. *See* Exhibit A to Declaration of Charles M.G. Parker dated November 14, 2003, ("Parker Decl."). On August 1, 1986, Petitioner was convicted of third-degree robbery and first-degree attempted robbery in the Supreme Court of the State of New York. *See* Exhibits B and C to Parker Decl. Deportation proceedings began on October 30, 1987. *See* Exhibit D to Parker Decl. At this time, the Immigration and Naturalization Service ("INS") released Petitioner on $5,000 bond. *See* Verified Complaint

and Habeas Corpus Petition dated October 23, 2003 ("Petition"), at ¶ 9. On December 20, 1989, while deportation proceedings were pending, Petitioner was convicted of first-degree attempted rape in the Supreme Court of the State of New York. *See* Exhibit E to Parker Decl.[1]

Upon completing his sentence, Petitioner was released on $12,000 bond in 1996 and deportation proceedings resumed. On December 18, 2001, the IJ ordered the removal of Petitioner *in absentia. See* Exhibit F to Parker Decl. In late 2002, Petitioner moved to Elizabeth, New Jersey. On May 30, 2003, pursuant to the December 18, 2001 *in absentia* order, Petitioner was arrested by the Bureau of Immigration and Customs Enforcement ("BICE") and has since been detained in Hudson County, New Jersey. *See* Petition at ¶ 12; Respondent's Brief dated November 14, 2003 ("Resp.Br."), at 2–3.

On June 20, 2003, the IJ reopened Petitioner's removal proceedings, ostensibly on the basis that the Notice to Appear on December 18, 2001 had been served on counsel who did not represent Petitioner. *See* Resp. Br. at 3; Exhibit G to Parker Decl. In addition, the IJ transferred Petitioner's removal proceedings to New Jersey and scheduled a hearing on the merits of Petitioner's application for relief from removal for on or about August 15, 2003.

On July 9, 2003, the District Director of New Jersey cancelled the prior bond and determined that Petitioner should be detained without bond. Petitioner challenged this decision, and upon review of BICE's no-bond determination, the IJ ordered the release of Petitioner under $12,000 bond on July 14, 2003. *See* Exhibit I to Parker Decl. On that same day, BICE filed for an automatic stay of the

---

1. Petitioner represents that he cannot recall the exact nature of this conviction, but believes that it is based on charges of statutory rape of a minor under the age of 14 years old. *See* Petitioner's Reply Brief dated November 21, 2003 ("Reply Br."), at 2.

IJ's order, pursuant to 8 C.F.R. § 1003.19(i)(2), in order to appeal the IJ's custody ruling. *See* Exhibit J to Parker Decl. On or about July 22, 2003, BICE filed its appeal of the IJ's bond determination. *See* Exhibit J to Parker Decl.

On October 8, 2003, the IJ conducted a merits hearing on Petitioner's application for a discretionary waiver of removal, pursuant to Immigration and Nationality Act ("INA") § 212(c).[2] The IJ declined to grant such relief to Petitioner, *see* Exhibit K to Parker Decl., and Petitioner has appealed this ruling, *see* Petition at ¶ 17.

On or about October 14, 2003, Petitioner received a Notice from the BIA, stating that it had received BICE's notice of appeal of the IJ's redetermination of the terms of Petitioner's custody. It appears that a delay in scheduling the briefing and argument in connection with this appeal resulted when the BIA misplaced the government's appeal. *See* Resp. Br. at 3.

On November 17, 2003, the parties were notified by the BIA that the deadline for submission of briefs on the custody status of Petitioner had been set for November 28, 2003. On November 24, 2003, upon the parties' submissions, this Court heard argument on Petitioner's application for a writ of habeas corpus.

On December 4, 2003, a single member of the BIA affirmed the IJ's custody determination to release Petitioner on $12,000 bond. Pursuant to the terms of 8 C.F.R. § 1003.19(i)(2), the decision was stayed for five days. On December 11, 2003, DHS moved for reconsideration of the BIA's ruling before a three-member panel and sought an emergency stay of the BIA's decision pending the determination of its motion for reconsideration. On December 12, 2003, the BIA granted an emergency stay and stated it would "adjudicate the motion to reconsider expeditiously."

On January 2, 2004, the BIA granted DHS' motion for reconsideration and remanded the custody determination to the IJ. *See* BIA Decision dated January 2, 2004. In granting DHS' motion, the BIA indicated it had been persuaded to affirm the IJ's initial bond determination of $12,000 because DHS' predecessor agency had set bond in this amount in 1996 upon Petitioner's release from state custody, and Petitioner had not been involved in any "trouble with the law" since his release. In its decision, the BIA stated that, on reconsideration, the IJ and the parties should clarify the nature of Petitioner's 1989 conviction for attempted rape in the first degree, and that the IJ should consider specifically the fact that Petitioner is a registered sex offender in New York. *See* *id.*

### LEGAL STANDARDS

#### A. Relevant Statutory Authority

Section 1226 governs the custodial status of aliens in pending removal proceedings. *See* 8 U.S.C. § 1226. Section 1226(a) grants the Attorney General discretion to determine whether an alien should be arrested and detained, or released on bond or otherwise, pending removal proceedings.[3] Section 1226(b) gives the Attorney General discretion to revoke

---

2. The merits hearing was not conducted as originally scheduled due to the failure of the government to produce Petitioner for the hearing on two separate occasions—August 15, 2003 and September 17, 2003.

3. By contrast, Section 1226(c) requires the Attorney General to detain certain criminal aliens pending removal proceedings. This section does not apply to criminal aliens who were released from incarceration prior to October 9, 1998. *See Matter of Adeniji*, 1999 WL 1100900, 22 I. & N. Dec. 1102 (BIA 1999). Therefore, all criminal aliens released from incarceration prior to October 9, 1998, such as Petitioner, are subject to detention pending removal proceedings only under Sections 1226(a) and (b).

a bond or parole under subsection (a). The discretionary decisions made pursuant to these provisions are not within any court's jurisdiction to set aside or review. *See* 8 U.S.C. § 1226(e).

Where the Attorney General determines the terms of custody of an alien pursuant to § 1226(a) or (b), an alien may seek review of this decision by an Immigration Judge. *See* 8 C.F.R. § 1003.19(c)(1)-(3); 8 C.F.R. § 236.1(d)(1).

In any case in which an IJ authorizes the release of an alien, on bond or otherwise, contrary and subsequent to a determination by the district director that the alien either should not be released or only released on bond of at least $10,000, the Department of Homeland Security ("DHS") is now authorized, pursuant to 8 C.F.R. § 1003.19(i)(2), to invoke an automatic stay of the IJ's ruling.[4] The regulation also establishes deadlines for effecting the stay and filing an appeal of such order.[5] This regulation was designed to ensure removal by preventing flight during the pendency of proceedings and to protect the public from potential harm. *See Ashley v. Ridge*, 288 F.Supp.2d 662, 664–65 (D.N.J.2003).

Once the automatic stay is initiated and BICE files its appeal with the BIA, the BIA has a finite period within which it must render its decision. *See* 8 C.F.R. § 1003.1(e)(8) (governing the timeliness of BIA decision-making). More specifically, "after completion of the record on appeal, including any briefs, motions or other submissions on appeal, the Board member or panel to which the case is assigned shall issue a decision on the merits *as soon as practicable, with a priority for cases or custody appeals involving detained aliens*." *Id.* (emphasis added). Furthermore, regulations also provide that the BIA "shall dispose of all appeals assigned to a single Board member within 90 days of completion of the record on appeal, or within 180 days after an appeal is assigned to a three-member panel (including any additional opinion by a member of the panel)." 8 C.F.R. § 1003.1(e)(8)(i). Thus, notwithstanding BICE's ability to stay a contrary custody determination by an IJ, regulations define the period of time in which the BIA should decide an appeal by the government.

### B. *Mandatory Detention Pursuant to § 1226(c) and Demore v. Kim*

Section 1226(c) requires the Attorney General to detain certain criminal aliens subject to removal pending the completion of removal proceedings. In *Demore v. Kim*, 538 U.S. 510, 123 S.Ct. 1708, 1719, 155 L.Ed.2d 724 (2003), the Supreme

---

**4.** This regulation previously only applied to aliens subject to mandatory detention, in cases where immigration judges had found Section 1226(c) inapplicable. *See Almonte–Vargas v. Elwood*, No. 02–2666, 2002 WL 1471555, at *5 n. 11 (E.D.Pa. June 28, 2002).

**5.** In its entirety, 8 C.F.R. § 1003.19(i)(2) provides: "*Automatic stay in certain cases.* In any case in which the district director has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon the Service's filing of a Notice of Service Intent to Appeal Custody Redetermination (Form EOIR–43) with the immigration court within one business day of the issuance of the order, and shall remain in abeyance pending decision of the appeal by the Board of Immigration Appeals. The stay shall lapse if the Service fails to file a notice of appeal with the Board in accordance with § 3.38 within ten business days of the issuance of the order of the immigration judge. If the Board authorizes release (on bond or otherwise), that order shall be automatically stayed for five business days. If, within that five-day period, the Commissioner certifies the Board's custody order to the Attorney General pursuant to § 3.1(h)(1) of this chapter, the Board's order shall continue to be stayed pending the decision of the Attorney General."

Court, reaffirming its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings," upheld the mandatory detention of criminal aliens pursuant to § 1226(c) as a constitutionally permissible part of the removal process. *See id.* at 1722. The Court concluded that § 1226(c) furthered the government's legitimate purpose of preventing aliens from fleeing prior to the completion of their removal proceedings and that detention pursuant to this provision would be limited to a finite period of time, ranging from approximately one to five months, the time generally needed for the completion of removal proceedings. *See id.* at 1721.[6] The Court further concluded that, notwithstanding evidence that other courses of action were available to Congress, the Government was not obligated under the Due Process Clause "to employ the least burdensome means to accomplish its goal" in "dealing with deportable aliens." *Id.* at 1720.

The Supreme Court also distinguished *Demore* from its opinion in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), where it held that the government could detain aliens subject to final orders of removal beyond the statutory 90–day period set forth at 8 U.S.C. § 1231(a)-(b), but only for as long as was reasonably necessary to secure removal, as the post-removal-period was "indefinite" and could lead to "potentially permanent" detention. *See Demore*, 123 S.Ct. at 1719–20 (summarizing its holding in *Zadvydas*). *Demore* distinguished *Zadvydas* on two grounds: (1) the *Zadvydas* aliens were subject to final orders of removal, for whom removal was no longer practically attainable; and (2) the *Zadvydas* aliens were being detained in the post-removal-period under 8 U.S.C. § 1231, which, unlike a pending removal determination, "has no obvious termination point." *See id.* at 1720 (stating that not only does detention [under § 1226(c)] have a definite termination point, in the majority of cases it lasts for less than the 90 days we considered presumptively valid in *Zadvydas*); *see also id.* at 1721 (noting that, where aliens appeal the decisions of immigration judges to the BIA, "appeal takes an average of four months, with a median time that is slightly shorter").

## C. *Discretionary Detention Pursuant to § 1226(a) and Ashley v. Ridge*

As stated above, pursuant to § 1226(a), the Attorney General has the discretion to detain an alien in pending removal proceedings, and an alien may appeal the custody decision to an IJ. If, upon the alien's appeal, an IJ orders the release of an alien, the government may invoke an automatic stay of such order, in any case, pursuant to 8 C.F.R. § 1003.19(i)(2).

Few courts have construed the automatic stay regulation as applied to aliens in detention pursuant to § 1226(a).[7] At least

---

6. Justice Kennedy, whose concurring opinion provided the fifth vote for the majority, noted that, while the justification for § 1226(c) is based on the Government's concern "over the risks of flight and danger to the community, the ultimate purpose behind the detention is premised upon the alien's deportability." *Id.* at 1721. He further concluded that criminal aliens subject to mandatory detention "could be entitled to an individualized determination as to his risk of flight or dangerousness if the

continued detention became unreasonable or unjustified." *Id.*

7. Indeed, as a general matter, few courts have construed the automatic stay regulation, ostensibly because it previously could be applied only to those aliens subject to mandatory detention under § 1226(c), and in many of these cases, criminal aliens challenged the constitutionality of the mandatory detention provision itself, rather than the validity of the automatic stay regulation. *See Almonte–Var-*

two have held 8 C.F.R. § 1003.19(i)(2) unconstitutional as applied against aliens detained pursuant to § 1226(a), and one of these cases, *Ashley v. Ridge*, was decided after, and considered, *Demore*. *See Ashley v. Ridge*, 288 F.Supp.2d 662 (D.N.J. 2003); *Bezmen v. Ashcroft*, 245 F.Supp.2d 446 (D.Conn.2003).[8]

*Ashley* decided the same legal question now before this Court—the constitutionality of the automatic stay provision—on facts similar to the instant case. Ashley was a legal permanent resident subject to removal on the basis of a sex offense conviction. He was released in 1998 and exempt from mandatory detention under § 1226(c). In 2003, he was arrested and detained pursuant to § 1226(a) pending the completion of his removal proceedings. DHS initially determined the petitioner should remain in custody during this period but, upon his appeal, the IJ ordered his release on $5,000 bond. The government invoked the same automatic stay provision at issue in this case, 8 C.F.R. § 1003.19(i)(2), in order to appeal the IJ's order. The petitioner sought relief upon an application for a writ of habeas corpus challenging the constitutionality of the automatic stay provision.

The *Ashley* court concluded that § 1003.19(i)(2) was unconstitutional because it deprived Ashley of, *inter alia*, substantive and procedural due process by subjecting Ashley to "indefinite" detention. *See Ashley*, at 673–74. According to *Ashley*, the government's automatic stay did not further the purposes of the regulation, namely to prevent flight of the alien and harm to the public, but instead rendered the IJ's redetermination of the conditions of custody of the alien an "empty gesture" by continuing detention for "an indeterminate period of time." *Ashley*, at 668–70. The *Ashley* court also shared the concern of the *Bezmen* court, which had been troubled by its view that the automatic stay provision failed to impose "any time parameters for the resolution of the appeal." *See id.* at 673–74 (citing *Bezmen*, 245 F.Supp.2d at 449–50).[9] Ultimately, the *Ashley* court's ruling rests on the view that "Petitioner remains indefinitely detained based on the unilateral determination of the BICE." *Id.* at 673–74.

The *Ashley* court found that petitioner's detention was "indefinite" ostensibly based on the text of the regulation. The government had argued that "if under *Kim* the detention of aliens is permissible under removal proceedings, *a fortiori*, detention

---

gas v. Elwood, 02–2666, 2002 WL 1471555, at *5 n. 11 (E.D.Pa. June 28, 2002) (citing cases).

**8.** *Bezmen* was decided two months prior to *Demore*. This Court briefly discusses *Bezmen* at note 9.

**9.** As mentioned, *Bezmen* was decided approximately two months prior to the Supreme Court's decision in *Demore* and thus could not have considered its significance to the case pending before it. Furthermore, it did not conclude that 8 C.F.R. § 1003.19(i)(2) was facially unconstitutional. In construing the application of the automatic stay provision to an immigration judge's order redetermining the conditions of custody, however, the *Bez-*

men court was particularly moved by its view that the regulation failed to impose "any time parameters for the resolution of the appeal" or "identify any objective that the approval be expedited." *Bezmen*, 245 F.Supp.2d at 449. Its primary reasoning appears to have been that "subsequent use of the automatic stay" had enabled the government to "effectively metamorphose the custody of any deportable alien into detention without effective bona fide individualized bond determination for *an indeterminate period of time*." *See id.* at 450 (emphasis added). Like the *Ashley* court, the *Bezmen* court did not cite the separate regulation governing the timeliness of BIA decision-making, *see* 8 C.F.R. § 1003.1(e)(8)(i), which, *inter alia*, establishes "priority" for "custody appeals involving detained aliens."

must be permissible during a subset of those proceedings, namely the bail determination." *Id.* Noting the "surface" logical appeal of the government's argument—*i.e.*, that detention pursuant to the automatic stay was no less definite than removal proceedings, which, as *Demore* concluded, have a "termination point"—the *Ashley* court nonetheless rejected this view.[10] The *Ashley* court also distinguished *Demore* from the case before it on the grounds that: (1) *Demore* examined the detention of aliens under § 1226(c), not § 1226(a), and a § 1226(c) analysis should not apply, otherwise Congress "would not

have devised the present bifurcated system in which mandatory detention is imposed only on a limited class of aliens, presumably those considered most dangerous,"[11] *id.* at 673; and (2) Kim, the petitioner in *Demore*, had conceded deportability and in any event opted to forego a *Joseph* hearing to determine the applicability of § 1226(c) to his detention, *see In re Joseph*, 1999 WL 339053, 22 I. & N. Dec. 799 (BIA 1999), whereas Ashley had "demanded the hearing to which he was entitled, but the results of that hearing were nullified by the automatic stay provision."[12] *Id.* at 671.

10.  *See id.* at 673–73 (suggesting that, based on *Demore*, the Supreme Court would "be greatly troubled" by the automatic stay provision because it "detains individuals without any discernible termination point" and further stating that the "length of an alien's detention has often played a critical role in due process considerations").

11.  The source of this presumption is unclear to this Court. It would appear just as likely that the application of the mandatory detention provision was limited to aliens released after October 1998 for other practical considerations.

12.  This latter distinction appears to state a difference in the procedural moment at which the petitioners in *Ashley* and *Demore* raised their claims, but it is unclear to this Court how the availability of a *Joseph* hearing to aliens in mandatory detention distinguishes the two cases so as to justify *Ashley's* departure from *Demore*. The *Joseph* hearing permits an alien to contest his or her eligibility under the mandatory detention statute, but if the alien prevailed, the IJ would proceed to the custody and bond analysis that applies to § 1226(a) aliens challenging the terms of their detention pursuant to 8 C.F.R. § 1003.19(c). *See Demore*, 123 S.Ct. at 1722 (Kennedy, J., concurring). Indeed, it appears the cases are more similar than not, as the government may effect an automatic stay "nullifying" an IJ's order releasing an alien subject to either mandatory or discretionary detention. *See In re Joseph*, 1999 WL 339053, 22 I. & N. Dec. 799 (BIA 1999) (stating that "the Immigration Judge's bond ruling as to whether the alien is 'properly included' in a

*mandatory* detention category is subject to the Service's invocation of the 'automatic stay' ") (emphasis added); 8 C.F.R. § 1003.19(i)(2) (providing that an automatic stay may be invoked "in any case" where the immigration judge authorizes release of an alien where BICE makes an initial determination that detention is required). Ostensibly, *Ashley* viewed the broad applicability of the automatic stay regulation as the precise problem, *i.e.*, the regulation permits the government to prolong the detention of § 1226(a) and (c) aliens alike by "convert[ing]" a criminal alien detained pursuant to § 1226(a) into a criminal alien in mandatory detention. *Ashley*, at 672–73. *Ashley* is less clear in its explanation for why the existence of two separate provisions governing *initial* detention actions compels the conclusion that Congress intended differential treatment for § 1226(a) and (c) aliens *at each subsequent step* of the custody determination process, or that Congress intended that no § 1226(a) criminal alien receive the same process or treatment as a § 1226(c) alien throughout custody proceedings. Indeed, the automatic stay provision, which may be invoked in cases where the government believes the alien should not be released or only released on high bond, may serve the purpose of ensuring the removal of criminal aliens excepted from § 1226(c) by virtue of their release date notwithstanding the flight or safety risk they may present. In fact, despite its view that *Demore* should not apply because of the differences between the cases, *Ashley* then suggests that, had *Demore* addressed a challenge to the automatic stay regulation, the case might have been decided like *Ashley*, not because, as it found, Congress

## D. *Jurisdiction*

■ Federal courts have jurisdiction to review applications for writs of habeas corpus, pursuant to 28 U.S.C. § 2241. Under section (c)(3) of this statute, federal courts are authorized to hear cases by anyone who is claiming that they are "being held in custody in violation of the Constitution or laws of the United States." *Zadvydas v. Davis*, 533 U.S. 678, 687, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). In addition, "any challenge by a criminal alien . . . to the constitutionality of [the immigration] laws must be made through a habeas petition." *Catney v. INS*, 178 F.3d 190, 195 (3d Cir.1999). District courts retain jurisdiction to hear habeas petitions filed by aliens subject to removal for having committed certain criminal offenses, as well as those filed by non-criminal aliens, where they allege constitutional violations. *See Chmakov v. Blackman*, 266 F.3d 210 (3d Cir.2001).

## DISCUSSION

Although not readily discernible from Petitioner's Complaint, it appears from Petitioner's submissions and oral argument that Petitioner claims that he was deprived of due process when: (1) BICE decided to detain Petitioner on July 9, 2003, without an individualized hearing, upon the reopening of removal proceedings, rather than releasing him pursuant to the 1996 terms of custody, *i.e.*, release on $12,000 bond; and (2) BICE invoked the automatic stay of the IJ's redetermination of Petitioner's custody status on July 14, 2003, resulting in his continued detention, notwithstanding the IJ's determination that Petitioner

should be released on $12,000 bond. This Court will first address whether or not it has jurisdiction to decide the claims before it. Based on this Court's finding that it has jurisdiction to review the second (but not first) of Petitioner's claims, it will address only the second claim below.

### 1. *Habeas Jurisdiction*

■ As stated above, Petitioner seeks relief based on BICE's July 9, 2003 determination that he should be detained without bond, despite his previous conditions of custody, which permitted his release on $12,000 bond. This Court does not have jurisdiction to decide the first claim. Under Sections 1226(a) and (b), the Attorney General has the discretionary authority to arrest and detain, or release, or revoke the bond or parole status of an alien. Under Section 1226(e), no court has jurisdiction to set aside these discretionary determinations by the Attorney General. Therefore, to the extent the Petitioner's complaint seeks relief from BICE's determination to detain him upon the reopening of his removal proceedings or to revoke his prior custody status as determined in 1996, this Court must dismiss this request for relief for lack of jurisdiction.

■ Petitioner's second claim, however, raises a constitutional challenge to the statutory framework that permits his continued detention. At this Court's November 24, 2003 hearing, counsel for Petitioner argued that the automatic stay regulation was unconstitutional because it effectively "undoes" the process that was due, and provided to, Petitioner when the IJ redetermined the terms of his custody and

intended some difference between the detention of criminal aliens detained pursuant to § 1226(a) versus (c), but rather because it permits detention "without any discernible termination point." *See id.* at 672–73. As set forth more fully below, this Court does not follow the view that detention pursuant to an automatic stay is "without any discernible

termination point," particularly in light of the regulations governing the timeliness of BIA decision-making, *see* 8 C.F.R. § 1003.1(e)(8), which neither *Ashley* nor *Bezmen* cite or address, nor does this Court agree that the automatic stay regulation renders the distinction between § 1226(a) and (c) meaningless or otherwise contravenes congressional intent.

454

ordered his release on $12,000 bond. Although the BIA can review *de novo* the IJ's custody redetermination, it cannot determine the legality of the automatic stay regulation itself. Therefore, in the absence of a clear expression of congressional intent to deprive federal courts of habeas jurisdiction in this instance, Petitioner's second claim falls within the habeas jurisdiction of this Court. *See Demore*, 123 S.Ct. at 1714 (concluding that § 1226(e) did not bar habeas jurisdiction to review the legality of § 1226(c), where the statute did not contain explicit provision precluding such jurisdiction and where petitioner raised a constitutional challenge to the legislation authorizing his detention without bail); *see also Ashley*, at *666–67 (asserting jurisdiction over constitutional challenge to automatic stay regulation from alien detained pursuant to § 1226(a)).

### 2. *Claims of Constitutional Violations*

■ Aliens in deportation proceedings are entitled to due process of law under the Fifth Amendment. *See Demore*, 123 S.Ct. at 1717 (citing *Reno v. Flores*, 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)). Even so, detention during deportation proceedings has been upheld as a constitutionally permissible part of the process. *See id.* at 1721–22 (citing *Wong Wing v. United States*, 163 U.S. 228, 235, 16 S.Ct. 977, 41 L.Ed. 140 (1896)). As discussed above, the Supreme Court recently reaffirmed this view in *Demore* in deciding to uphold § 1226(c), the provision mandating the detention of criminal aliens pending the completion of removal proceedings. In its opinion, the Court rejected the assertion that § 1226(c) impermissibly detained criminal aliens, in violation of Fifth Amendment due process protections, and instead concluded that the mandatory detention of criminal aliens, which lasted for the "limited period of his removal proceedings," reflected a narrow detention

policy, and furthered the government's legitimate interest in ensuring the removal of criminal aliens who might flee or cause harm to the public during their removal proceedings. *Id.* In reaching this conclusion, the Court was persuaded by evidence of the difficulties of removing criminal aliens and the finite time period for completing these removal proceedings. *See id.* at 1720–21.

■ Although Petitioner in this instance has been detained pursuant to § 1226(a) and 8 C.F.R. § 1003.19(i)(2), this Court finds *Demore* instructive. First, the *Demore* Court emphasized that the statute authorizing mandatory detention of criminal aliens was justified by the legitimate congressional interest in ensuring the removal of criminal aliens in pending removal proceedings. Second, and most significantly, the *Demore* Court found that the mandatory, and in some instances months-long, detention of criminal aliens in pending removal proceedings did not raise the constitutional concerns that might arise in the post-removal-period context, because removal proceedings, unlike the post-removal period, have a termination point.

For the reasons discussed below, Petitioner has failed to show that his ongoing detention pursuant to the government's stay of the IJ's ruling deprives him of constitutional protections. In the instant case, Petitioner, an alien subject to removal on the basis of prior criminal convictions, has been detained pending the completion of removal proceedings, which, as indicated in *Demore*, carry a definite termination point. Furthermore, there is at least "some merit" to the removal charges underlying the detention here. *See Demore*, 123 S.Ct. at 1722 (Kennedy, J., concurring). But for Petitioner's pending appeal on the merits of his removal proceedings, an IJ already has determined that he should be removed, and his detention continues pending his own ap-

peal of the merits of the removal order. Certainly, the review of the terms of Petitioner's custody should last no longer than the duration of his removal proceedings.[13] Therefore, consistent with the reasoning in *Demore*, this Court finds that the automatic stay provision effecting the ongoing detention of Petitioner, a criminal alien in pending removal proceedings, is constitutionally permissible.

In addition, this Court finds that separate regulations governing the timeliness of BIA decision-making provide for the speedier resolution of custody rulings and make clear that the detention of aliens, pursuant to an automatic stay, should not be indefinite. In fact, 8 C.F.R. § 1003.1(e)(8) specifically dictates that the BIA resolve custody appeals concerning detained aliens "as soon as practicable." Section 1003.1(e)(8) further provides that, upon completion of the record and parties' submission of briefs, the BIA has a 90 or 180 day deadline by which it must resolve the case, depending on whether a member or panel decides the matter. By direct reference to the timeliness with which the BIA must decide custody appeals, the plain text of this regulation indicates its applicability to § 1003.19(i)(2), the regulation authorizing an automatic stay of an IJ's custody determination. Indeed, since oral argument on Petitioner's application, review of the IJ's custody determination has been proceeding in a timely manner. The single member of the BIA reviewed the government's appeal promptly, and a

three-member panel decided DHS' motion for reconsideration within 30 days. Detention pursuant to the automatic stay regulation will not, and should not, be indefinite.

This Court is aware that a delay in the resolution of the custody appeal occurred when the BIA misplaced the government's appeal and that, as a result, Petitioner has been detained for approximately four months since he received a favorable ruling from the IJ regarding his release. However, the complaint that an agency has not acted as quickly as Petitioner would like, or that the government invoked an automatic stay instead of an emergency stay pursuant to 8 C.F.R. § 1003.19(i)(1), as argued by Petitioner at this Court's November 24, 2003 hearing, does not rise to the level of a constitutional violation, particularly where there is a termination point to removal proceedings and definite time limits govern the BIA's disposition of this matter.[14]

So long as it is the Supreme Court's "longstanding view," reaffirmed in *Demore*, that detention is a constitutionally permissible part of the removal process until such process has concluded, and insofar as the government's interest in the removal of aliens with prior convictions may be furthered by the detention of this petitioner, who is subject to removal based on his prior convictions, during the finite period of removal proceedings, this Court cannot grant a writ of habeas corpus to Petitioner.[15]

---

13. In fact, a single member of the BIA affirmed the IJ's determination in a decision dated December 4, 2003, and a three-member panel granted DHS' motion for reconsideration of this decision on January 2, 2004.

14. To the extent *Demore* leaves room for finding due process violations where "continued detention became unreasonable or unjustified," *see Demore*, 123 S.Ct. at 1722 (Kennedy, J., concurring), this showing has not been made here.

15. *Demore* rested in part on evidence that removal proceedings, including appeals, for aliens subject to mandatory detention lasted, in most cases, no more than five months. No evidence has been submitted to this Court regarding whether removal proceedings for aliens subject to discretionary detention generally resolve more or less quickly than mandatory-detention cases. To the extent *Demore* could be read to suggest that detention pending removal proceedings is constitutionally permissible because removal proceedings not

## CONCLUSION

For the foregoing reasons, this Court dismisses Petitioner's application for a writ of habeas corpus.

only are definite with a termination point *but also* limited to several months, this Court notes that Petitioner's removal proceedings have not unreasonably exceeded the five months found to be sufficiently definite and limited in *Demore.* Indeed, the IJ already has denied Petitioner's request for a waiver of removal, and removal proceedings, and his detention thereto, continue upon his decision to appeal the IJ's determination.