Javier ZAVALA, Petitioner,

v.

Tom RIDGE, in his official capacity, Secretary Department of Homeland Security; John Ashcroft, in his official capacity, Attorney General, Department of Justice, Respondents.

No. C04–00253 JSW.

United States District Court, N.D. California.

March 1, 2004.

Marc Van Der Hout, Stacy Tolchin, Zachary Nightingale, Van Der Hout, Brigagliano & Nightingale, LLP, San Francisco, CA, for Plaintiff.

Edward A. Olsen, United States Attorney's Office, San Francisco, CA, for Defendant.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

WHITE, District Judge.

Now before the Court is the petition for writ of habeas corpus by Petitioner Javier Zavala. Petitioner asserts that he is currently being detained in violation of the Due Process Clause of the United States Constitution by virtue of the automatic stay of his bail redetermination pursuant to 8 C.F.R. § 1003.19(i)(2). Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Petition is HEREBY GRANTED and the automatic stay dissolved effective March 8, 2004 at 5:00 p.m. This brief stay of this Order for one week will afford the Government an opportunity to seek an emergency stay from the Board of Immigration Appeals ("Board") under 8 C.F.R. § 1003.19(i)(1) of the bond redetermination ordered by Immigration Judge ("IJ") Lamonte S. Freerks dated November 21, 2003. If no emergency stay is obtained by the Government by March 8, 2004 at 5:00 p.m., Petitioner must be permitted to post bond and be released in accordance with IJ Freerk's decision and order.

## BACKGROUND

The background facts are not significantly disputed. Petitioner is a native and citizen of Mexico. He has lived in the United States since 1980, and has been a lawful permanent resident since December 1, 1990. His wife is also a lawful permanent resident. They live in Santa Cruz, California.

On January 19, 1994, Petitioner was convicted in California Superior Court for the County of Sonoma of committing a lewd act on a child, in violation of California Penal Code § 288a(b)(1). He was sentenced to six months in the county jail and two years probation. He has had no other arrests or convictions.

Petitioner was placed into removal proceedings on April 24, 2003, after his return from a trip abroad. He was charged with being removable under 8 U.S.C. § 1182(a)(2)(A)(i)(1), for having been convicted of a crime of moral turpitude. An IJ terminated the removal proceeding on October 15, 2003, on the ground that Petitioner's conviction fell within the "petty offense exception" to 8 U.S.C. § 1182(a)(2)(A)(ii)(II) as a single offense for which he was not sentenced more than six months.

Petitioner was then placed into new removal proceedings on November 12, 2003. He was charged with being removable under 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted of an aggravated felony under 8 U.S.C. § 1101(a)(43)(A) (sexual abuse of a minor). Petitioner was taken into custody by the Bureau of Immigration and Customs Enforcement ("BICE" or "the Service") in San Francisco, California.

Initially, the deportation officer in San Francisco set a bond of $25,000. Immediately thereafter, Petitioner was transferred to Florence, Arizona. During transit, Petitioner's family was informed that it was not possible to post bond, as no officers had access to Petitioner's immigration file. Upon Petitioner's arrival at the detention facility in Florence, Arizona, on November 14, 2003, the deportation unit there changed the bond determination, revoking the $25,000 bond and determined to hold Petitioner without bond during the pendency of his removal proceedings.

On November 14, 2003, Petitioner filed a request for bond redetermination with the IJ and his bond hearing was held on November 21, 2003, before IJ Freerks, in Florence, Arizona. In conducting the hearing, the IJ considered all written documents presented by both Petitioner and the BICE, as well as their testimony and provided an opportunity for cross-examination. Upon making a determination that Petitioner was not a danger to the community or a significant flight risk, the IJ ordered that Petitioner be released from BICE custody on a $5,000 bond.

On November 21, 2003, the BICE filed a Form EOIR–43, or Notice of Intent to Appeal Custody Redetermination, which automatically stayed the IJ's custody decision pursuant to 8 C.F.R. § 1003.19(i)(2) while the BICE appeals the IJ's decision to the Board and the Board rules on the Government's appeal.

On December 5, 2003, the BICE filed a Notice of Appeal to the Board. Upon receipt of the appeal, the Board issued a briefing schedule, pursuant to which the parties were directed to file briefs in support of their positions over the propriety of the IJ's custody decision by February 13, 2004. On February 2, 2004, the Board received a motion from the Government for additional time to brief the issue. The

Board granted the motion for a continuance, permitting the Government to file its brief by no later than March 5, 2004.

Petitioner remains in BICE custody and in removal proceedings. On December 9, 2003, at the Master Calendar removal hearing, Petitioner requested a change of venue. He was subsequently transferred from Florence, Arizona to Oakland, California. On January 16, 2004, Petitioner filed this petition for writ of habeas corpus alleging that the applicable regulation invoked by the BICE for an automatic stay of the IJ's bond decision violates both his substantive and procedural due process rights under the Fifth Amendment and that the regulation is *ultra vires* because it exceeds the authority bestowed upon the BICE by Congress under 8 U.S.C. § 1226(a).

## ANALYSIS

### A. Legal Background

The custodial status of aliens who have committed crimes is governed by 8 U.S.C. § 1226. Section (a) provides that the Attorney General has discretion to arrest and detain an alien pending the removal decision and discretion to release the alien on bond. An alien may seek a bond redetermination hearing of the Attorney General's custody determination before an IJ. 8 C.F.R. § 236.1(d)(1). Section (c), however, is mandatory and requires that the Attorney General detain certain classes of aliens during the pendency of their removal proceedings, including aliens who have been convicted of an aggravated felony. 8 U.S.C. § 1226(c)(1); § 1227(a)(2)(A)(iii). Section 1226(c) applies only prospectively, and therefore does not affect criminal aliens who were released from incarceration prior to the effective date of the law, October 9, 1998. *See Matter of Adeniji*, 22 I. & N. Dec. 1102 (BIA 1999). Because

Petitioner was released from incarceration prior to October 9, 1998, he is subject only to the discretionary provisions of § 1226(a).

Prior to the effective date of 8 C.F.R. § 1003.19(i)(2), aliens detained pursuant to the Attorney General's discretion under 8 U.S.C. § 1226(a) who were granted release on bond by an immigration judge could only remain in detention if the Service secured an emergency stay of the bond determination from the Board under 8 C.F.R. § 1003.19(i)(1). The new challenged regulation, which was implemented on an emergency basis and without public comment and made effective on October 31, 2001, amends the regulations by "expanding the regulatory provision for a temporary stay of an immigration judge's decision to order an alien's release in any case in which a district director has ordered that the alien be held without bond or has set a bond for $10,000 or more, to maintain the status quo while the Immigration and Naturalization Service seeks expedited review of the custody order by the Board of Immigration Appeals (Board) or by the Attorney General." Executive Office for Immigration Review; Review of Custody Determinations, 66 Fed.Reg. 54909 (Oct. 31, 2001).

The automatic stay is invoked by virtue of the Service filing a Notice of Service of Intent to Appeal Custody Redetermination (a Form EOIR–43) with the immigration court within one business day of the issuance of the immigration judge's order. The individualized determination by the immigration judge remains in abeyance pending decision by the Board and possible further review by the Attorney General. 8 C.F.R. § 1003.19(i)(2). Although there is no mandatory time frame set by the regulation for final determination of custody, the Executive Office commentary indicates that the custody appeal proceedings are supposed to be conducted on an "expedited basis." 66 Fed.Reg. 54909 (Oct. 31, 2001). The Service must file its appeal within ten business days of the immigration judge's order and, after completion of the appellate briefing, the Board must rule within 90 days if before a single judge, and 180 days if before a three-judge panel, with a priority for cases or custody appeals involving detained aliens. See id.; 8 C.F.R. § 1003.1(e)(8)(i). If there is an "impending decision by the United State Supreme Court or a United States Court of Appeals, or impending Department regulatory amendments, or an impending en banc Board decision may substantially determine the outcome of a case or a group of cases pending before the Board," a decision may be stayed. 8 C.F.R. § 1003.1(e)(8)(iii). Lastly, if the Board authorizes release, that decision is automatically stayed for five business days, during which time the decision may be certified to the Attorney General. The stay continues pending decision by the Attorney General. 8 C.F.R. § 1003.19(i)(2). The regulation therefore fails to impose any certain time parameters for final resolution of the custody determination.

In promulgating the changes to the regulation, the Department of Justice stated that the purpose of the automatic stay provision was to "allow the Service to maintain the status quo while it seeks review by the Board, and thereby avoid the necessity for a case-by-case determination of whether a stay should be granted in particular cases in which the Service had previously determined that the alien should be kept in detention and no conditions of release would be appropriate." Id.

## B. Substantive Due Process

Petitioner contends that 8 C.F.R. § 1003.19(i)(2) facially violates substantive due process because it implicates the fun-

damental right to be free from physical restraint, but is not narrowly tailored to meet the compelling government interest of protecting public safety. Respondents contend that in the immigration context, the government may detain aliens during their removal proceedings and that the articulated rationale for promulgating the automatic stay provision provides the special justification necessary for the restraint.

The Fifth Amendment guarantees that no person shall be deprived of liberty without due process of law. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). Government detention violates the Due Process Clause unless it is ordered in a criminal proceeding with adequate procedural safeguards, or in certain special and non-punitive circumstances "where a special justification, . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Kansas v. Hendricks*, 521 U.S. 346, 356, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997); *Zadvydas*, 533 U.S. at 690, 121 S.Ct. 2491. Substantive due process protections from arbitrary confinement apply to aliens, notwithstanding their residency status. *Id.* at 693, 121 S.Ct. 2491 ("[t]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *see also Mathews v. Diaz*, 426 U.S. 67, 77, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) (holding that substantive due process protections apply to permanent resident aliens).

In this regard, Respondent has not shown that any "special justification" or compelling government interest exists that outweighs Petitioner's constitutional liberties in order to justify his continued detention without bail. *See, e.g., Zadvydas*, 533 U.S. at 690, 121 S.Ct. 2491 (finding no sufficiently strong special justification for indefinite detention under 8 C.F.R. § 1231(a)(6)). The Attorney General articulated several bases for the necessity of the automatic stay provision: (1) a concern that with the passage of time, there would be an increased risk that a dangerous alien may be released; (2) the need to avoid a case-by-case determination of whether a stay should be granted in cases in which the Service had already determined that the alien should be kept without bail or with bail in excess of $10,000; and, (3) a concern that the time difference between the east and west coast would permit the release of a dangerous alien after the Board had closed for the day, effectively eliminating the opportunity for an emergency appeal of the immigration judge's release order. 66 Fed.Reg. 54909, 54910 (Oct. 31, 2001). The concern was therefore to afford the Service the time necessary to ensure that a potentially dangerous alien did not flee. The regulation notes state that the overriding purpose was to protect the public from an alien "that it believes is a threat to national security or the public safety." *Id.*

However, in this case, as in all instances in which the automatic stay is invoked by the Service, there has already been a determination by an immigration judge that the alien is not a danger to the public or a significant flight risk. In this matter, Petitioner was found guilty of a misdemeanor offense almost ten years ago, for which he completed a six-month sentence and two years probation. He has been law-abiding ever since that time, has not since been arrested for any crimes, nor engaged in any suspicious activity. He is married, employed and owns his own home in Santa Cruz, California. The Immigration Judge,

after a full hearing, including the presentation of evidence and a full opportunity for cross-examination, determined that Petitioner did not pose a danger to the community nor a significant flight risk, and released him on $5,000 bail. The bond determination by the Immigration Judge already addressed the government's stated safety concerns. The emergency stay provision found in 8 C.F.R. § 1003.19(i)(1) presents an appropriate and less restrictive means whereby the government's interest in seeking a stay of the custody redetermination may be protected without unduly infringing upon Petitioner's liberty interest. *See, e.g., Bezmen v. Ashcroft,* 245 F.Supp.2d 446, 451 (D.Conn.2003).

Moreover, this Court does not find either a special or compelling interest to detain Petitioner for a potentially indefinite period without bail by virtue of the automatic stay. The regulation applies *only* to those situations in which an immigration judge has already determined that the alien is not a danger and has ordered the alien released on bond. In this matter, Petitioner remains detained for an indeterminate period of time pursuant to the unilateral determination by a Service official, despite the reasoned findings of the Immigration Judge.

■ The regulation, which permits unilateral government detention of individuals without a case-by-case determination after a reasoned finding that they do not pose threat to safety or a risk of flight, violates the Due Process Clause because no special justification exists that outweighs the individual's constitutionally protected interest in avoiding physical restraint. *See Zadvydas,* 533 U.S. at 690, 121 S.Ct. 2491. Accordingly, this Court finds that Petitioner is currently detained in violation of substantive due process.[1]

## C. Procedural Due Process

■ Even if this Court had not found that the challenged stay provision violates due process, Petitioner may still make out a claim that the implementation of the provision violates procedural due process. When government action survives substantive due process scrutiny, it still must still be implemented in a fair manner. *United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

■ "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). Aliens are afforded procedural due process during deportation proceedings. *Flores,* 507 U.S. at 306, 113 S.Ct. 1439 ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.")

■ To determine whether government conduct violates procedural due process, the Court must consider three factors: (1) the nature of the private interest affected

---

1. This Court is mindful of the Supreme Court decision in *Demore v. Kim,* 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003), which upheld the constitutionality of the mandatory detention provision in 8 C.F.R. § 1226(c). The district court in *Ashley,* 288 F.Supp.2d at 671–73, addressed in detail the important distinctions between the mandatory section of the statute and the challenged regulation at issue in this matter. During oral argument, counsel for the Government, although contending that the general detention principles in *Kim* are persuasive here, conceded that the distinctions render its ultimate holding inapposite. This Court agrees that the automatic stay provision was not addressed at all in *Kim* and the distinctions as enumerated by the court in *Ashley* render its holding inapplicable here.

by the government action; (2) the risk of an erroneous deprivation of the interest as a result of the procedures used and the probable value of additional or substitute safeguards; and, (3) the government's interest in using its own procedures and the fiscal and administrative burdens by additional or substitute safeguards. *Mathews*, 424 U.S. at 335, 96 S.Ct. 893.

The private interest here is the right to be free from detention for a potentially indefinite period of time pending final bail determination. Freedom from government custody or detention "lies at the heart of the liberty" that due process protects. *Zadvydas*, 533 U.S. at 690, 121 S.Ct. 2491. Certainly, Petitioner's liberty interest in remaining free from governmental restraint is of the highest constitutional import. The Government has failed to demonstrate that Petitioner presents an identified and articulable threat to the community so as to justify his continued detention without judicial review of the bail determination. *Cf. Salerno*, 481 U.S. at 751, 107 S.Ct. 2095.

In addition, the risk of the erroneous deprivation of liberty as a result of the application of the automatic stay provision is substantial. A unilateral determination made by the Service attorney that effectively overrules the reasoned decision of the Immigration Judge poses a serious risk of error. As opposed to the usual circumstance in which a stay requires the demonstration of likelihood of success on the merits and irreparable harm, the automatic stay provision does not demand any showing and, in fact, was promulgated explicitly for the purpose of avoiding a case-by-case determination. *See* 66 Fed. Reg. 54909 (Oct. 31, 2001). The opportunity to be heard, to present evidence, and to conduct cross-examination was afforded both the Service and Petitioner before the Immigration Judge. The ability of the Service, under the challenged provision, effectively to overturn or nullify the bail determination pending appeal, without having to make a showing and by the mere filing of a notice of appeal, poses a serious risk of error.

The procedure additionally creates a potential for error because it conflates the functions of adjudicator and prosecutor. *See Marcello v. Bonds*, 349 U.S. 302, 305–06, 75 S.Ct. 757, 99 L.Ed. 1107 (1955) (holding that the special inquiry officer adjudicating over an immigration case cannot also undertake the functions of prosecutor in the same matter); *see also Ashley*, 288 F.Supp.2d at 671 ("It produces a patently unfair situation by taking the stay decision out of the hands of the judges altogether and giving it to the prosecutor who has by definition failed to persuade a judge in an adversary hearing that detention is justified."). In this matter, the same Service attorney who lost before the Immigration Judge as a prosecutor, effectively overruled the decision as the adjudicator by invoking the automatic stay. This unilateral procedure creates a risk of erroneous deprivation of the liberty interest.

Lastly, the government's interest in using its own procedures and the administrative burdens of an alternative are minimal. The process by which the immigration judge renders a bail redetermination accounts for the government's safety and flight concerns. Should the Service determine that the immigration judge erred in her determination, the Service can seek an emergency stay provision under 8 C.F.R. § 1003.19(i)(1). The government would then need to demonstrate that it was likely to succeed on the merits of its appeal to the Board and that it would suffer irreparable harm in the interim. Should it not be able to so demonstrate, the stay of the bond redetermination order would be unjustified. The burden to the government,

particularly where it does not necessitate the creation of an additional administrative framework, is minimal.

Accordingly, this Court finds that invocation of the automatic stay provision under these circumstances violates Petitioner's procedural due process rights.

### D. The Automatic Stay Regulation is *Ultra Vires* and Therefore Invalid

■ To the extent the challenged regulation permitting an automatic stay goes beyond the authority of the statutory framework of 8 U.S.C. § 1226(a) by eliminating the discretionary authority of immigration judges to determine whether an individual may be released, it is invalid. *See Romero v. INS*, 39 F.3d 977, 980 (9th Cir.1994) (holding that immigration regulation that is inconsistent with the statutory scheme is invalid). According to the plain language of 8 U.S.C. § 1226(a), the determination whether an individual should be detained during removal proceedings is discretionary. Under subsection (a), Congress has vested the authority in the immigration court to, in the exercise of its discretion, determine whether release may be appropriate. In contrast, under subsection (c), criminal aliens, who have been determined by Congress to pose a substantial risk, are subjected to mandatory detention during their removal proceedings.

The automatic stay provision of 8 C.F.R. § 1003.19(i)(2) effectively eliminates the discretionary nature of the immigration judge's determination and results in a mandatory detention for the class of aliens who have been held without bail or on over $10,000 bond. As a result of the regulation, the immigration judge's individualized determination that the alien poses neither a danger to the community nor a significant flight risk is automatically stayed upon filing of an appeal. The regulation therefore has the effect of mandatory detention of a new class of aliens, although Congress has specified that such individuals are not subject to mandatory detention. The automatic stay provision permits the government to impose mandatory detention, contrary to the immigration judge's finding, in all cases in which the Service has predetermined that the alien should be held without bail or has set bond at $10,000 or more. *See, e.g., Bezmen*, 245 F.Supp.2d at 450 ("Because the INS makes the initial custody and bond determination, the agency effectively predetermines in each individual case its ability to stay any bond ordered by an IJ making no release determination or setting bond at $10,000 or more."); *see also Ashley*, 288 F.Supp.2d at 673 ("If Congress wanted to make detention mandatory for all aliens who have committed crimes, it would not have devised the present bifurcated system in which mandatory detention is imposed only on a limited class of aliens, presumably those considered most dangerous. As Congress specifically exempted aliens like Petitioner from the mandatory detention of § 1226(c), it is unlikely that it would have condoned this back-end approach to detaining aliens like Petitioner through the combined use of § 1226(a) and § 3.19(i)(2).") Because this back-ended approach effectively transforms a discretionary decision by the immigration judge to a mandatory detention imposed by the Service, it flouts the express intent of Congress and is *ultra vires* to the statute. *See Romero*, 39 F.3d at 980. On this additional ground, the challenged regulation is invalid.

### CONCLUSION

For the foregoing reasons, this Court vacates the automatic stay of Immigration Judge Freerk's bail determination dated November 21, 2003. The automatic stay will be dissolved effective Monday, March

8, 2004 at 5:00 p.m. As disclosed at the hearing in this matter on Friday, February 27, 2004, this one-week stay of this Court's order will afford the Government an opportunity to seek from the Board an emergency stay of the custody redetermination order by the Immigration Judge under 8 C.F.R. § 1003.19(i)(1). If no emergency stay is obtained by the Government by Monday, March 8, 2004 at 5:00 p.m., Petitioner must be permitted to post bond and be released in accordance with IJ Freerk's decision and order dated November 21, 2003.

**IT IS SO ORDERED.**